Filed 12/30/20  P. v. Martinez CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B302433 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA469641) |
| v. | |
| NOE FERNANDO MARTINEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ray G. Jurado, Judge.  Affirmed.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael R. Johnsen and David W. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

# I.  INTRODUCTION

A jury convicted defendant and appellant Noe Fernando Martinez of sexual penetration by a foreign object and sexual battery by restraint.  The trial court sentenced defendant to three years in prison and issued a criminal protective order protecting defendant's victim, F.H.  On appeal, defendant contends the court erred by admitting his pretrial custodial statements to the police, which were purportedly obtained in violation of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*), erred in instructing the jury on the elements of the crime of sexual penetration by a foreign object, and erred in issuing a criminal protective order that purports to prevent him from contacting his children.  We affirm.

# II.  FACTUAL BACKGROUND

Defendant began a romantic relationship with F.H. in 2011.  Defendant and F.H. had two daughters together, one born in 2014, and the other born in 2017.  After the birth of the first daughter, F.H. quit her job as a housekeeper to take care of the baby.  Defendant worked two jobs.

In 2016, defendant hurt his back and stopped working for a period of time.  After defendant's injury, his personality changed.  Defendant began to call F.H. "fat," "trash," and "cow;" complained about her cooking and cleaning; and refused to shower for several days.

F.H. and defendant frequently argued about money and sex.  Defendant wanted sex every day.  F.H. "almost never"

wanted to engage in sex but did so in order to "pleasure" defendant.

On June 28, 2018, F.H. was cutting vegetables for pupusas, which she planned to sell. This upset defendant, who tried to throw the food in the trash and twisted F.H.'s arms behind her back. F.H. was "very scared" and responded by grabbing defendant's testicles. Defendant's father eventually separated the two.

Shortly after this incident, F.H. told defendant that she did not love him anymore. F.H. stopped engaging in sex with defendant and defendant began to sleep on a sofa located in the bedroom.

On July 11, 2018, at around midnight, defendant approached F.H. while she was in bed with one of their daughters. Defendant grabbed her arms and pulled her to the sofa. Defendant removed F.H.'s clothes and touched her vagina.[1] F.H. responded by kicking defendant and hitting him on the side of his body until he let her go. F.H. then returned to the bed and wrapped herself in a blanket.

Five minutes later, defendant went to the bed, removed the blanket from around F.H.'s body, and digitally penetrated her anus three times, causing her pain.[2] F.H. reported the incident to police.

On July 14, 2018, defendant was arrested by Los Angeles Police Department officers and transported to a police station. At the police station, a Spanish speaking officer and a detective (the officers) interviewed defendant. Defendant admitted to the

---

[1]     This conduct formed the basis for count 2.

[2]     This conduct formed the basis for count 1.

officers that on the evening of July 11, 2019, F.H. did not want to have sex with him and he digitally penetrated F.H.'s anus in anger. Defendant also admitted that he pulled F.H. out of bed that night.

## III. PROCEDURAL HISTORY

On December 26, 2018, the Los Angeles County District Attorney charged defendant by information with sexual penetration by a foreign object of F.H. (Count 1, Pen. Code,[3] § 289, subd. (a)(1)(A)) and sexual battery by restraint of F.H. (Count 2, § 243.4, subdivision (a)).[4]

On August 6, 2019, the jury found defendant guilty on both counts.

On November 13, 2019, the trial court sentenced defendant to an aggregate sentence of three years and issued a 10-year domestic violence restraining order, pursuant to section 136.2, subdivision (i)(1), protecting F.H. from defendant.

---

[3]    Further statutory references are to the Penal Code unless otherwise indicated.

[4]    A third count for violation of section 243.4, subdivision (a) was dismissed before trial.

# IV.  DISCUSSION

A.    Miranda *Rights and Waiver*

    1.    <u>Background</u>

Prior to their interview of defendant, the officers delivered certain admonitions to him.  The admonishment was recorded on video and transcribed:

"[Officer]:  Um, what we're gonna do right now is, we're gonna talk about [*sic*] you of the incident, but first, since we are where we are, I have to advise you of your rights, okay?  Do you understand what I'm saying?

"[Detective]:  We're gonna read the—your rights, okay?

"[Defendant]:  Okay.

"[Detective]:  Okay. You have the right to rem[a]in silent.

"[Defendant]:  Um-hum.

"[Detective]:  Do you understand?

"[Officer]:  It's yes or no.

"[Defendant]:  Yeah.

"[Officer]:  Yes.

"[Defendant]:  Yeah.  Yes.

"[Detective]:  You have to s—yes or no.

"[Defendant]:  Yes.

"[Detective]:  Anythings [*sic*] you say may be used against you in [a] court of law.

"[Defendant]:  Oh, wel—

"[Detective]:  Do you understand?

"[Defendant]:  Yes.

5

"[Detective]:  You have the right to the presence of an attorney before and during any integration [*sic*].  Do you understand?

"[Defendant]:  Yes.

"[Detective]:  If y— if you have no man— if you have no money to pay an attorney, one will be appointed to you freed [*sic*] of cost . . .

"[Defendant]:  Um-hum.  Yes.

"[Detective]:  . . . before . . .

"[¶]  . . .  [¶]

"[Detective]:  Before any integration [*sic*], . . .

"[Defendant]:  Um-hum.

"[Detective]:  . . . if that's what you want—if y—what you want.  Do you understand?

"[Detective]:  Okay.

"[Detective]:  Yes?

"[Defendant]:  Uh, yes."

The detective did not ask defendant whether, knowing his rights, he wished to speak to the officers.  Instead, as recounted in the reporter's transcript by defense counsel:  "When [the officer] gets to the last advisement, which is typically, 'Knowing these rights, do you wish to talk to us?'[,] the detective specifically [stated], 'Don't read that last one,'[5] and stop[ped] the Spanish speaking officer from advising [defendant] of that.  After that, the detective just ask[ed] preliminary questions, such as, 'Where do you live?' and things of that nature."

---

[5]  This is not reflected in the English transcription of the recorded interrogation.  The prosecutor conceded that this occurred and the trial court, upon reviewing the recording, agreed.

After asking these preliminary questions, the officers asked defendant whether he knew why he was "here," referring to the police station. Defendant responded, "Uh? That's what I wanna know, why did she accuse me over there in . . . ."

Defendant challenged, in the trial court, the admissibility of his custodial statements to the officers. Defendant argued that the officers did not ask him whether he wanted to waive his *Miranda* rights prior to their interrogation of him, and that his waiver was not knowing and intelligent. Defendant did not testify but his counsel argued that he had no experience with law enforcement and did not understand the implications of his statements to the police.

The trial court denied defendant's motion to preclude his statements from trial: "I do not find that there's any evidence that [defendant] was confused, misled, or reluctant to speak. [¶] I do not find that there is any suggestion that the police resorted to any physical or psychological pressure to get [defendant] to speak. I do not find—there is no evidence to suggest that he was induced to provide statements based on improper promises or that there was any other fact that would tend to show that his statement was involuntary. [¶] I do find that he was aware of his rights, and that he was aware that when he chose to continue speaking that he was abandoning those rights, and understood the consequences of his decision to do so. [¶] . . . [Defendant's] waiver was implicit and . . . it was knowingly, freely and voluntarily made."

2.    Analysis

On appeal, defendant contends that "the record does not support a finding that [he] made a knowing and voluntary waiver of his Fifth Amendment rights before answering the officer[s'] questions in the custodial interrogation."  In defendant's view, the record demonstrates that he did not voluntarily waive his right to remain silent because:  the officers failed to expressly ask whether defendant waived his rights; the officers failed to advise him at the outset of the interrogation why they were interrogating him; and he had a limited criminal record.

"The test for validity [of a *Miranda* waiver] is as follows. 'First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.'" (*People v. Molano* (2019) 7 Cal.5th 620, 648 (*Molano*).)  "'The prosecution bears the burden of demonstrating the validity of the defendant's waiver by a preponderance of the evidence.' [Citations.]  In addition, '[a]lthough there is a threshold presumption against finding a waiver of *Miranda* rights [citation], ultimately the question becomes whether the *Miranda* waiver was [voluntary,] knowing and intelligent under the totality of the circumstances surrounding the interrogation.' [Citation.]  On appeal, we conduct an independent review of the trial court's legal

determination and rely upon the trial court's findings on disputed facts if supported by substantial evidence." (*People v. Williams* (2010) 49 Cal.4th 405, 425.)

Here, the officers did not expressly ask defendant whether, after being advised of his rights, he wished to waive them. But that fact, alone, is insufficient to demonstrate that defendant's waiver was involuntary. "It is well settled that law enforcement officers are not required to obtain an express waiver of a suspect's *Miranda* rights prior to a custodial interview and that a valid waiver of such rights may be implied from the defendant's words and actions." (*People v. Parker* (2017) 2 Cal.5th 1184, 1216.)[6]

Similarly, that the officers did not directly advise defendant that they wished to ask him about his sexual abuse of F.H. does not render defendant's waiver involuntary. (See *Molano, supra*, 7 Cal.5th at p. 652 ["[T]he fact that the officers did not tell defendant they were going to ask him about [the victim's] killing does not invalidate the waiver. Defendant's lack of 'awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether [he] voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege.'"].) In any event, and contrary to defendant's contention on appeal that he did not know why the officers were interviewing him, there is substantial evidence to support a finding that defendant was well aware of the purpose of the officers' interview since he responded to their question, "You

---

[6]     Further, because the officers were not required to obtain an express waiver of defendant's *Miranda* rights from him, even "the intentional failure to do so [is] not a deliberate *Miranda* violation requiring the suppression of [defendant's] subsequent statements." (*People v. Cunningham* (2015) 61 Cal.4th 609, 642.)

know why you're here?", with, "That's what I wanna know, why did she accuse me over there in . . . ."

Finally, we reject defendant's contention that his waiver was not voluntary because he "had a limited criminal record, had never before been interrogated by police and had no sophistication with the criminal justice system." Prior experience with the criminal justice system is not necessary to find a valid waiver. (See *People v. Suarez* (2020) 10 Cal.5th 116, 161 ["the fact that he lacked experience with the criminal justice system did not invalidate his waiver or render his subsequent statements involuntary in the circumstances here"].) Moreover, even if defendant lacked an extensive criminal record, he did have prior interactions with law enforcement since he had a prior criminal conviction for driving with a .08 percent blood alcohol content, a misdemeanor, and had pending charges for driving under the influence of alcohol, driving with .08 percent blood alcohol content, and driving with a suspended or revoked license, among other charges. Further, there was no evidence that defendant had not previously been interrogated by the police. On this record, and based on the totality of the circumstances, we conclude that there was substantial evidence to support the court's conclusion that defendant knowingly and voluntarily waived his *Miranda* rights.

B. *Instructional Error*

1. Background

In instructing the jury on count 1, sexual penetration by a foreign object, the trial court stated that this crime "requires

general criminal intent."  The court continued:  "For you to find a person guilty of this crime, that person must not only commit the prohibited act, but must do so with wrongful intent.  A person acts with wrongful intent when he intentionally does a prohibited act, however, it's not required that he intended to break the law.  The act required is explained in the instruction for that crime."

In instructing the jury on the elements of sexual penetration by a foreign object, the trial court read CALCRIM No. 1045:  "To prove the defendant guilty of this crime, the People must prove that:  [¶]  [1.]  The defendant committed an act of sexual penetration with another person;  [¶]  [2.]  The penetration was accomplished by using a foreign object;  [¶]  [3.]  The person did not consent to the act;  [¶]  AND  [¶]  [4.]  The defendant accomplished the act by force, violence, duress, menace or fear of immediate and unlawful bodily injury to another person."  The court further instructed the jury that:  "Sexual penetration means penetration, however slight, of the genitals or anal opening of the other person for the purpose of sexual abuse, arousal, or gratification."  (See § 289, subd. (k).)  The court did not deliver the optional instruction set forth in CALCRIM No. 1045 that "[p]enetration for sexual abuse means penetration for the purpose of causing pain, injury, or discomfort."  (Italics omitted.)

On count 2, sexual battery, the trial court correctly instructed the jury that this crime required specific intent:  "For you to find a person guilty of this crime, that person must not only intentionally commit the prohibited act, but must do so with a specific intent or mental state."  The court also instructed the jury that to prove defendant's guilt of sexual battery, "the People must prove that  [¶]  . . .  [¶]  [t]he touching was done for the

11

specific purpose of sexual arousal, sexual gratification or sexual abuse."

During closing argument, the prosecutor, in discussing count 1, stated: "And certainly, there is an intent requirement as well. The defendant had to have done this for the purposes of either sexual gratification, arousal, or sexual abuse, or a combination of any of those."

2.    Analysis

Defendant contends the trial court erred by failing to instruct the jury that "penetration for sexual abuse" means "'penetration for the purpose of causing pain, injury, or discomfort'" and in instructing the jury that the crime of sexual penetration by a foreign object is a general intent crime. We find no reversible error.

"A claim of instructional error is reviewed de novo. [Citation.] An appellate court reviews the wording of a jury instruction de novo and assesses whether the instruction accurately states the law. [Citation.] In reviewing a claim of instructional error, the court must consider whether there is a reasonable likelihood that the trial court's instructions caused the jury to misapply the law in violation of the Constitution. [Citations.] The challenged instruction is viewed 'in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner.'" (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.)

We disagree with defendant's contention that the trial court delivered an "incomplete" instruction on count 1 when it

failed to define "sexual abuse." Trial courts have a duty to define technical terms that have meanings peculiar to the law, but "no duty to clarify, amplify, or otherwise instruct on commonly understood words or terms used in statutes or jury instructions. 'When a word or phrase "'is commonly understood by those familiar with the English language and is not used in a technical sense peculiar to the law, the court is not required to give an instruction as to its meaning in the absence of a request.'" [Citations.] A word or phrase having a technical, legal meaning requiring clarification by the court is one that has a definition that *differs* from its nonlegal meaning. [Citation.]'" (*People v. Griffin* (2004) 33 Cal.4th 1015, 1022–1023.)

Section 289 defines "sexual penetration" as "the act of causing the penetration, however slight, of the genital or anal opening of any person . . . for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object." (§ 289, subd. (k)(1).) A plain reading of section 289, subdivision (k)(1) supports a conclusion that the Legislature did not intend "sexual abuse" to be given a technical meaning that differs from the commonly understood meaning of "sexual abuse." "Sexual" is defined as "of, relating to, or associated with sex or the sexes." (<https://www.merriam-webster.com/dictionary/sexual> [as of Dec. 27, 2020], archived at <https://perma.cc/8DWC-WQNN>.) "Abuse" is defined as "physical maltreatment." (<https://www.merriam-webster.com/dictionary/abuse> [as of Dec. 27, 2020], archived at <https://perma.cc/N3MX-PZJP>.) Thus, the commonly understood meaning of "sexual abuse" is the physical maltreatment of anyone in a sexual manner, which we

13

believe any reasonable trier of fact would understand as including the incident here.

We agree with defendant that the trial court erred when it instructed the jury that sexual penetration by force is a general intent crime. (See *People v. McCoy* (2013) 215 Cal.App.4th 1510, 1540 ["in drafting section 289, the Legislature required the act of penetration to be committed with the specific intent to gain sexual arousal or gratification or to inflict abuse on the victim"]; accord, *People v. ZarateCastillo* (2016) 244 Cal.App.4th 1161, 1167; see *People v. Alvarado* (2005) 125 Cal.App.4th 1179, 1186 ["Specific intent crimes typically contain such phrases as '"with the intent to"' achieve or '"for the purpose of"' achieving some additional result"].) We conclude, however, that the court's error was harmless even assuming that the more stringent harmless beyond a reasonable doubt standard applies. (*Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).) Under the *Chapman* standard, we ask "'whether it is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict absent the error.'" (*People v. Canizales* (2019) 7 Cal.5th 591, 615.)

The trial court's error here was harmless beyond a reasonable doubt. The court correctly instructed the jury that to find defendant guilty of sexual penetration, it was required to find that defendant engaged in "penetration . . . for the purpose of sexual abuse, arousal or gratification." In other words, even though the court incorrectly instructed the jury that sexual penetration is a general intent crime, the court correctly instructed the jury that it was required to find that defendant acted with the required intent. Second, the prosecutor accurately stated that "there is an intent requirement" to the charge. Third,

the jury found defendant guilty of count 2, sexual battery, a crime for which the court correctly instructed the jury it must find specific intent. A rational jury could not have concluded that when defendant grabbed F.H.'s arms and touched her vagina, he acted with the purpose of sexual arousal, sexual gratification, or sexual abuse, but that he lacked such intent when, five minutes later, he digitally penetrated F.H.'s anus. Finally, the evidence that defendant acted with specific intent in sexually penetrating F.H. was strong: F.H. testified that she felt pain when defendant inserted his finger into her anus. And, defendant admitted to the police that he digitally penetrated F.H.'s anus because he wanted sex and was angry at her. (See *People v. White* (1986) 179 Cal.App.3d 193, 205 ["'when a penetration is accomplished for the purpose of causing pain, injury or discomfort, it becomes sexual abuse"].)[7]

## C.    *Criminal Protective Order*

### 1.    Background

At sentencing, the trial court issued a 10-year domestic violence restraining order pursuant to section 136.2, subdivision (i)(1), protecting F.H. from defendant. The court read

---

[7]    Defendant also asserts that reversal is required based on cumulative error. "Under the 'cumulative error' doctrine, we reverse the judgment if there is a 'reasonable possibility' that the jury would have reached a result more favorable to defendant absent a combination of errors." (*People v. Poletti* (2015) 240 Cal.App.4th 1191, 1216.) Defendant has identified only one error, which we found harmless. Accordingly, the cumulative error doctrine does not apply.

15

the order into the record as follows: "It says you must not harass her, strike her, threaten her, assault her or follow, stalk, molest, destroy or damage her property. You cannot disturb her peace, keep her under surveillance or block her movements. [¶] While the order is in effect, and it will be in effect for 10 years, you cannot own or possess a firearm. [¶] You must not attempt to prevent anyone from attending a hearing or testifying or making a report to law enforcement. [¶] You cannot take any action to obtain the addresses or locations of the victim or her family members. You must have no contact whatsoever with her. You must stay at least a hundred yards away from her." The court also issued a written order, paragraph 10 of which provided that defendant "must take no action to obtain the addresses or locations of protected persons or their family members, caretakers or guardian."

2.     Analysis

Defendant contends the trial court lacked authority to issue the protective order, which he characterizes as "improperly includ[ing] the daughters" because there was no evidence that defendant had harmed or attempted to harm his daughters. He alternatively argues that the protective order, specifically, paragraph 10, is unconstitutionally vague and ambiguous. Finally, he complains that the protective order "could be construed to prevent [him] from . . . seeking visitation or shared custody through the Family Law courts."

We review de novo whether the trial court's protective order was authorized by statute. (*People v. Delarosarauda* (2014) 227 Cal.App.4th 205, 210 (*Delarosarauda*).) We also review de

16

novo defendant's constitutional challenge to the order. (See *People v. Scott* (2016) 3 Cal.App.5th 1265, 1271.)

We reject defendant's argument that the trial court lacked authority to issue the protective order. Indeed, section 136.3, subdivision (a) requires the order that was issued here: "The court *shall* order that any party enjoined pursuant to [s]ection 136.2 be prohibited from taking any action to obtain the address or location of a protected party or a protected party's family members, caretakers, or guardian, unless there is good cause not to make that order." (Italics added.) Here, there is no evidence in the record of the existence of good cause to allow defendant to obtain his daughters' address or location. For instance, the record does not reveal, one way or the other, whether the children are the subject of a visitation or custody order.

Next, we reject defendant's characterization of the protective order as improperly including the daughters as protected persons. We agree that "[o]n the record before the trial court, there was no reason to believe that any crime was being or had been perpetrated or attempted to be perpetrated against [the daughters]." (*Delarosarauda, supra,* 227 Cal.App.4th at p. 211.) The protective order, however, did not list the daughters as protected persons. It only listed F.H. as a protected person.

Further, the protective order is not impermissibly vague. "[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' [Citation.] The rule of fair warning consists of 'the due process concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders' [citation], protections that are 'embodied in the due process clauses of the federal and California Constitutions. (U.S. Const., Amends. V, XIV; Cal. Const., art. I, § 7).'" (*In re Sheena K.* (2007)

17

40 Cal.4th 875, 890.) Under the concept of fair warning, the government is barred "from enforcing a provision that 'forbids or requires the doing of an act in terms so vague' that people of 'common intelligence must necessarily guess at its meaning and differ as to its application.'" (*People v. Hall* (2017) 2 Cal.5th 494, 500.) Here, by its plain terms, paragraph 10 of the order prevents defendant from taking affirmative acts to obtain the address or location of F.H.'s family members, which includes defendant's daughters. It requires no guessing as to its meaning.

Finally, we reject defendant's contention that, despite the absence of any express prohibition, the protective order "could be construed to prevent [him] from . . . seeking visitation or shared custody through the Family Law courts." Nothing in the protective order prevents defendant from seeking visitation or sharing custody of the children. Moreover, section 136.2 contemplates the issuance of visitation and custody orders in conjunction and coordination with a criminal protective order. (See § 136.2, subds. (e)(3) & (f); see also Cal. Rules of Court, rule 5.445(b)(1)(D) [rule requiring court communication protocol in domestic violence cases involving child custody intended to "[p]ermit appropriate visitation between a criminal defendant and his or her children under civil court orders, but at the same time provide for the safety of the victim or witness by ensuring that a criminal court protective order is not violated"]; cf. *In re N.L.* (2015) 236 Cal.App.4th 1460, 1466 [in context of domestic violence restraining order pursuant to Welf. & Inst., § 213.5, subd. (a), "[m]onitored visitation of a child is not incompatible with a restraining order"].) In any event, and as we discussed above, there is no indication in the record that a family law order regarding visitation or custody has issued. Thus, any possible

violation of defendant's visitation or custody rights is not ripe for review. (*People v. England* (2000) 83 Cal.App.4th 772, 780.)[8]

---

[8] To the extent there is an issue with visitation or custody in the future, the criminal protective order is subject to modification. (See Super. Ct. L.A. County, Local Rules, rule 8.34(d); see also Cal. Rules of Court, rule 5.445(c)(2) [every superior court must adopt local rules which include "[a] procedure by which the court that has issued a criminal court protective order may, after consultation with a court that has issued a subsequent child custody or visitation order, modify the criminal court protective order to allow or restrict contact between the person restrained by the order and his or her children"].)

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM, J.


We concur:



RUBIN, P. J.



BAKER, J.