[No. B248615. Second Dist., Div. Four. June 20, 2014.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLOS REGINALDO DELAROSARAUDA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of the Factual Background and parts A., B., C. and E. of the Discussion.

**COUNSEL**

Carol S. Boyk, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret A. Maxwell, Stephanie C. Santoro and Brendan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MANELLA, J.—**

## INTRODUCTION

Carlos Reginaldo Delarosarauda appeals from a judgment and sentence, following his convictions for corporal injury to a cohabitant, assault, and misdemeanor vandalism. He contends his convictions should be reversed, as (1) the trial court committed misconduct during voir dire; (2) the court admitted testimonial hearsay in violation of his right to confront the witness under the Sixth Amendment of the federal Constitution; and (3) there was insufficient evidence to support the vandalism conviction. He further contends

the court lacked authority to issue a protective order forbidding him to contact his son and stepdaughter for the next 10 years, except through counsel. The People request that this court amend the abstract of judgment to correct appellant's presentence custody credits and otherwise affirm the judgment.

■ In the unpublished portion of our decision, we affirm the convictions and remand the matter with directions to the superior court to modify the abstract of judgment to correct the amount of presentence custody credits. In the published portion of our decision, we conclude the court lacked authority to issue that portion of the protective order barring appellant from having contact with his son and stepdaughter, as they were not "victim[s]" within the meaning of Penal Code sections 136.2, subdivision (i)(1) and 273.5, subdivision (j).[1] Nor was the postconviction protective order authorized under section 136.2, subdivision (a)(6). Accordingly, on remand, the court is directed to vacate the protective order with respect to them.

## PROCEDURAL HISTORY

An information charged appellant with corporal injury to a spouse or cohabitant, Mirian Jackeline Baquedano (§ 273.5, subd. (a); count 1), assault by means likely to produce great bodily injury (§ 245, subd. (a)(4); count 2), assault with a deadly weapon (§ 245, subd. (a)(1); count 3), and misdemeanor vandalism (§ 594, subd. (a); count 4). As to count 1, it further alleged that appellant personally used a deadly and dangerous weapon, a rope (§ 12022, subd. (b)(1)). Appellant pled not guilty and denied the allegation.

Trial was by jury. During voir dire, the trial court made certain remarks to the jury in response to comments by some prospective jurors. The court asked the jurors if they were comfortable with the concept that some victims of violence may be reluctant to assist in prosecuting the person who committed the violent acts, that victims may be reluctant to testify for or against the accused perpetrator, and that they may still have feelings of love and loyalty for the accused. During a recess, defense counsel objected to the court's remarks, and moved for a mistrial. The court denied the motion.

The jury found appellant guilty as charged, and found true the deadly weapon allegation as to count 1. The trial court sentenced appellant to a total of five years in prison and one year in county jail. As to count 1, the court imposed the upper term of four years, plus one year for the deadly weapon enhancement (§ 12022, subd. (b)(1)). As to counts 2 and 3, the court imposed the upper term of four years on each count, but stayed the sentences pursuant

---

[1] All further statutory citations are to the Penal Code, unless otherwise stated.

to section 654. As to count 4, the court sentenced appellant to one year in county jail, consecutive to the prison sentence. Appellant was awarded 652 days of presentence custody credit, consisting of 326 days of actual custody and 326 days of conduct credit. The court also imposed various fines and assessments.

Finally, the court issued a criminal protective order as to Baquedano and her two children for the duration of 10 years. Among other provisions, appellant was ordered not to contact the protected parties, except through defense counsel.

Appellant timely filed a notice of appeal.

## FACTUAL BACKGROUND[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

Appellant contends (1) the trial court committed misconduct when it made remarks during voir dire that tainted the jury pool; (2) he was denied his fundamental right to confront an adverse witness when the court permitted the prosecutor to present the hearsay statements of Kiarah (appellant's stepdaughter); and (3) there was insufficient evidence of appellant's malicious intent to support the vandalism conviction. Appellant further contends the court lacked authority to issue a protective order prohibiting him from having contact with his son Jeffrey and his stepdaughter Kiarah for the next 10 years, except through counsel. The People contend there was no reversible error, but request that this court amend the abstract of judgment to correct appellant's presentence custody credits.

A.–C.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

D.   *Criminal Protective Order*

1.   *Relevant Proceedings* ·

At sentencing, the trial court issued a criminal protective order as to Baquedano, Kiarah, and Jeffrey for the duration of 10 years. Among other provisions, appellant was ordered not to contact the protected parties, except through defense counsel.

---

[*]See footnote, *ante*, page 205.

After the appellate record was filed, counsel filed a written ex parte motion with the trial court to correct the criminal protective order. At the hearing on the motion, appellant argued that the court was not authorized under either section 136.2 or 273.5 to issue the protective order as to Kiarah and Jeffrey because they were not domestic violence victims. The court indicated that its tentative ruling was to allow Kiarah and Jeffrey to remain on the protective order pursuant to section 136.2, subdivision (a)(6). The court found that as to Kiarah, although she was not a direct victim of domestic violence, she was a "collateral" victim because she witnessed the incident. Additionally, as an "immediate family member[]," the court believed she qualified under section 136.2, subdivision (a)(6). As to Jeffrey, the court ruled that it might be inclined to lift the protective order as to him if appellant obtained a family court order allowing him contact with Jeffrey. The court denied the motion, but ordered that the protective order be modified to include a reference to section 136.2.

### 2. *Analysis*

The parties agree that the court lacked authority to issue a protective order as to Kiarah and Jeffrey under section 136.2, subdivision (a)(6), as that statutory provision does not authorize postconviction protective orders. (See *People v. Selga* (2008) 162 Cal.App.4th 113, 118–119 [75 Cal.Rptr.3d 453].) The People argue, however, that the court had authority to issue the protective order under section 136.2, subdivision (i)(1) or 273.5, subdivision (j). Appellant disagrees, arguing that those statutory provisions apply only to "victims," and Kiarah and Jeffrey were not victims of the charged offenses.

■ "Issues of statutory interpretation are questions of law subject to our independent or de novo review. [Citations.] 'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute. [Citations.] But "[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." [Citations.] Thus, "[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." [Citation.] Finally, we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." ' [Citation.]" (*Babalola v. Superior Court* (2011) 192 Cal.App.4th 948, 956 [121 Cal.Rptr.3d 740] [interpreting § 136.2].)

### a. *Protective Order Under Section 136.2, Subdivision (i)(1)*

Section 136.2, subdivision (i)(1) provides in pertinent part: "In all cases in which a criminal defendant has been convicted of a crime of domestic violence . . . , the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with the victim. The order may be valid for up to 10 years, as determined by the court. . . . It is the intent of the Legislature in enacting this subdivision that the duration of any restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of the victim and his or her immediate family." As used in the chapter containing section 136.2, subdivision (i)(1), " '[v]ictim' means any natural person with respect to whom there is reason to believe that any crime as defined under the laws of this state . . . is being or has been perpetrated or attempted to be perpetrated." (§ 136, subd. (3).)

■ Under the plain language of section 136.2, subdivision (i)(1), a postconviction protective order is limited to restraining the defendant from contact with a "victim," that is, a "natural person with respect to whom there is reason to believe that any crime . . . is being or has been perpetrated or attempted to be perpetrated." (§ 136, subd. (3).) Appellant was convicted of assaulting Baquedano. On the record before the trial court, there was no reason to believe that any crime was being or had been perpetrated or attempted to be perpetrated against Jeffrey or Kiarah. Baquedano testified that appellant "never touched" the children, and no evidence suggests that appellant ever attempted to harm them. Baquedano thought the children were in another room at the time of the incident, and she never saw Kiarah in the bedroom. Thus, section 136.2, subdivision (i)(1) does not provide statutory authorization for the issuance of a protective order forbidding appellant any contact with Jeffrey or Kiarah.

Relying on *People v. Clayburg* (2012) 211 Cal.App.4th 86 [149 Cal.Rptr.3d 414] (*Clayburg*), the People contend that Jeffrey and Kiarah were "victims," as they were members of Baquedano's immediate family and were harmed by appellant's actions. The People's reliance on *Clayburg* is misplaced for several reasons. First, *Clayburg* involved a different statute, section 646.9, subdivision (k), although the language in that statute is substantially similar to the language in section 136.2, subdivision (i)(1).

■ More importantly, we must disagree with the *Clayburg* majority's interpretation of the language in section 646.9, subdivision (k). That statute provides: " 'The . . . court . . . shall consider issuing an order restraining the defendant from any contact with the victim, that may be valid for up to 10 years, as determined by the court. [(First sentence.)] It is the intent of the

Legislature that the length of any restraining order be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of the victim and his or her immediate family. [(Second sentence.)]' " (*Clayburg, supra*, 211 Cal.App.4th at pp. 88–89.) The *Clayburg* majority held that the second sentence modified the first sentence, and expanded the meaning of "victim" in the first sentence to include "a member of the immediate family of a stalking victim . . . who suffers emotional harm." (*Id.* at p. 88, citation omitted.) We read the second sentence to mean what it says: the court should consider, among other factors, the "safety of the victim and his or her immediate family" in determining the length of the restraining order authorized in the first sentence. Nothing suggests the second sentence also modifies the scope of the restraining order. As noted by Justice Perren in the *Clayburg* dissent, if the term "victim" in the first sentence included a child of the family, the second sentence would have no need to refer to " 'the victim and his or her immediate family.' " (*Id.* at pp. 94–95 (dis. opn. of Perren, J.).)

■ For similar reasons, we conclude in the instant case that the statutory language in section 136.2, subdivision (i)(1) providing that "the duration of any restraining order issued by the court be based upon . . . the safety of the victim and his or her immediate family" does not modify the term "victim" in the first sentence. Thus, any restraining order issued under this provision must be limited to prohibiting contact with the victim.

Finally, *Clayburg* is factually distinguishable. There, the evidence established that the defendant stalked the named victim and the victim's child, causing both to suffer emotional harm. On those facts, a protective order could have been issued covering the child under section 136.2, subdivision (i)(1), as the child was a "natural person with respect to whom there is reason to believe that any crime as defined under the laws of this state . . . is being or has been perpetrated or attempted to be perpetrated." (§ 136, subd. (3).) In contrast, here, no evidence suggests Jeffrey and Kiarah were similarly targeted or harmed.

In sum, absent evidence from which the trial court could reasonably conclude that appellant had harmed or attempted to harm Jeffrey or Kiarah, the court lacked authority to issue the no-contact protective order as to the children under section 136.2, subdivision (i)(1).

### b. *Protective Order Under Section 273.5, Subdivision (j)*

■ Section 273.5, subdivision (j) contains language similar to section 136.2, subdivision (i)(1). It provides: "Upon conviction under subdivision (a) [for willful infliction of a corporal injury upon a victim], the sentencing court

shall also consider issuing an order restraining the defendant from any contact with the victim, which may be valid for up to 10 years, as determined by the court. It is the intent of the Legislature that the length of any restraining order be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of the victim and his or her immediate family." (§ 273.5, subd. (j).) Section 273.5, subdivision (b) provides that section 273.5, subdivision (a) applies if the victim is or was one or more of the following: (1) the offender's spouse or former spouse, (2) the offender's cohabitant or former cohabitant, (3) the offender's fiancée, or (4) the mother or father of the offender's child. (§ 273.5, subd. (b).)

█   Under the plain language of section 273.5, the court lacked authority to issue a protective order as to Jeffrey and Kiarah. First, Jeffrey and Kiarah are not victims under section 273.5, subdivision (j). Baquedano confirmed that appellant never used physical force against them (see *People v. Johnson* (2007) 150 Cal.App.4th 1467, 1477 [59 Cal.Rptr.3d 405] [a violation of § 273.5 occurs only where a direct application of force on the victim results in corporal injury]). Second, for the reasons stated above, the second sentence of section 273.5, subdivision (j)—addressing the length of the restraining order—does not modify the term "victim" in the first sentence or expand it to include the children. Our interpretation is bolstered by the fact that the children do not fall within one or more of the categories of victims listed in section 273.5, subdivision (b). That statutory section limits the applicability of section 273.5, subdivision (a) to certain victims (spouses, cohabitants, fiancées, or parents of the offender's child), and correspondingly limits the scope of the restraining order authorized by section 273.5, subdivision (j). Thus, section 273.5, subdivision (j) does not authorize the court to issue a protective order as to Jeffrey and Kiarah.

In short, neither section 136.2, subdivision (i)(1), nor section 273.5, subdivision (j) provides legal authority for the issuance of a protective order forbidding appellant from any contact with Jeffrey or Kiarah. Accordingly, the protective order must be modified to remove their names.

E.   *Presentence Custody Credits**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The convictions are affirmed, and the matter is remanded with directions to the superior court to modify the abstract of judgment to correct the amount of

---

*See footnote, *ante*, page 205.

presentence custody credits, and to modify the protective order to remove Jeffrey and Kiarah. As modified, the judgment is affirmed.

Epstein, P. J., and Willhite, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 24, 2014, S220276.