Filed 9/13/21  P. v. Oliveros CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>HECTOR VELAZQUEZ OLIVEROS,<br><br>　　Defendant and Appellant. | H048488<br>(Santa Clara County<br>Super. Ct. No. B1904111) |

Defendant Hector Velazquez Oliveros pleaded no contest to forcible rape and stalking.  The trial court imposed an aggregate term of four years four months in state prison.  The court also issued a ten-year protective order prohibiting Oliveros from having any contact with the victim and her immediate family members.

Oliveros contends the trial court lacked jurisdiction to issue a protective order prohibiting contact with the immediate family members of the victim.  For the reasons below, we conclude this claim is without merit.  We will affirm the order issuing the restraining order.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Procedural Background*

The prosecution charged Oliveros with seven counts:  count 1—assault with intent commit rape (Pen. Code, § 220, subd. (b))[1]; count 2—assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)); counts 3, 4, and 5—forcible rape (§ 261,

---

[1] Subsequent undesignated statutory references are to the Penal Code.

subd. (a)(2)); count 6—stalking (§ 646.9, subd. (a)); and count 7—petty theft (§ 488). As part of a plea agreement, Oliveros pleaded no contest to count 5 (forcible rape) and count 6 (stalking). Consistent with the plea agreement, the trial court imposed an aggregate term of four years four months in state prison, composed of three years for count 5 and a consecutive term of 16 months for count 6.

The trial court also issued a ten-year restraining order under section 136.2 and section 646.9, subdivision (k). The plea agreement included imposition of a restraining order prohibiting contact with the victim, but the parties at the plea hearing made no mention of the order covering any other members of the victim's family.

At sentencing, when the court ruled the protective order would prohibit contact with the victim's immediate family members in addition to the victim herself, defense counsel objected to the inclusion of the family members. The trial court found the statutory basis for the inclusion of immediate family members was satisfied: "The Court does find the conduct that has been referenced to the Court would indicate that the statutory basis by which to include immediate family members are appropriate, under these circumstances, for the ten-year period." Accordingly, the court overruled the objection and imposed the protective order.

## B. *Facts of the Offenses[2]*

In September 2019, Jane Doe reported to the police that Oliveros had sexually assaulted her and was continuously stalking her. Doe was married with two daughters at the time.

Doe reported that she had met Oliveros four years prior and began a romantic affair that included consensual sex. Doe ended the relationship in September 2018, but Oliveros wanted to continue it. On one occasion, he went to her residence uninvited to discuss continuing the relationship. When Doe stated she wanted to end the relationship,

---

[2] The facts are taken from the probation report.

2

Oliveros got upset and pushed her to the ground. While holding her hands behind her back, he pulled her pants down and inserted his penis into her vagina repeatedly. On another occasion, Oliveros again went to Doe's house uninvited, and when she told him she would not let him in, he forced his way inside. He threatened to kill her if she stopped seeing him.

Oliveros would also park his car on the street near Doe's residence and watch her walking her daughters to school. In September 2019, he went to her place of work and followed her to her vehicle. When she unlocked the vehicle, he got into the passenger's side and told her he wanted to talk to her. When she insisted that he get out of the car, he took her cell phone with him. When he appeared at her place of work two days later, she called the police, and he was arrested.

Oliveros admitted to the police that he had waited outside Doe's residence when she walked her children to school. He also admitted he went to her place of work and sent provocative photos of her to her husband. He denied raping Doe; he claimed they had consensual sex.

## II. DISCUSSION

Oliveros contends the trial court lacked the authority to issue a ten-year protective order prohibiting contact with the victim's immediate family members. Oliveros does not challenge the protective order as to the victim herself. Rather, Oliveros argues that the family members were not "victims" as defined by the relevant statutes, and therefore should not have been included as protected persons in the protective order. The Attorney General contends the trial court was authorized to extend the protective order to the victim's immediate family members under section 646.9, subdivision (k).

### A. *Legal Principles*

Section 646.9, subdivision (k)(1) provides that for any person convicted under subdivision (a): "The sentencing court also shall consider issuing an order restraining the defendant from any contact with the victim, that may be valid for up to 10 years, as

3

determined by the court.  It is the intent of the Legislature that the length of any restraining order be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of the victim and his or her immediate family."  That section does not define "victim."

In the case of a defendant convicted of rape, among other offenses, section 136.2, subdivision (i)(1) sets forth substantially similar language:  "[T]he court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with a victim of the crime.  [. . .]  It is the intent of the Legislature in enacting this subdivision that the duration of a restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of a victim and the victim's immediate family."  Section 136 defines "victim" for the purposes of that chapter as "any natural person with respect to whom there is reason to believe that any crime as defined under the laws of this state or any other state or of the United States is being or has been perpetrated or attempted to be perpetrated."  (§ 136.)

"Issues of statutory interpretation are questions of law subject to our independent or de novo review.  [Citations.]  'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law.  [Citations.]  In order to determine this intent, we begin by examining the language of the statute.  [Citations.]  But "[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend."  [Citations.]  Thus, "[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act."  [Citation.]  Finally, we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." ' [Citation.]"  (*Babalola v. Superior Court* (2011) 192 Cal.App.4th 948, 956.)

With respect to the issuance of a legally authorized criminal protective order, we imply all findings necessary to support the judgment, and our review is limited to whether there is substantial evidence in the record to support these implied findings. (*People v. Race* (2017) 18 Cal.App.5th 211, 217 (*Race*).)

### B. The Trial Court had the Authority to Issue a Restraining Order Prohibiting Contact with Doe's Immediate Family

Under the plain language of both section 136.2 and 646.9, the restraining order is limited to prohibiting contact with a victim. Oliveros argues the trial court had no authority to issue a restraining order prohibiting contact with Doe's immediate family members because they were not "victims" under either section 136.2 or section 646.9.

Courts have construed the term "victim" to include persons not expressly named as victims in the charging document, but not so broadly to include a family member where the family member suffered no harm, or the defendant did not commit or attempt to commit any crime against the family member. As to section 136.2, "criminal protective orders must be construed broadly to include any individual against whom there is 'some evidence' from which the court could find the defendant had committed or attempted to commit some harm within the household." (*Race*, *supra*, 18 Cal.App.5th at p. 219.) "Under the plain language of section 136.2, subdivision (i)(1), a postconviction protective order is limited to restraining the defendant from contact with a 'victim,' that is, a 'natural person with respect to whom there is reason to believe that any crime . . . is being or has been perpetrated or attempted to be perpetrated.' " (*People v. Delarosarauda* (2014) 227 Cal.App.4th 205, 211.)

In construing section 646.9, the Court of Appeal for the Second District, Division 6 upheld a restraining order that protected the victim's daughter in addition to the named victim. (*People v. Clayburg* (2012) 211 Cal.App.4th 86.) The named stalking victim was the defendant's husband, but the couple's daughter testified that she had witnessed some of the defendant's conduct and she was emotionally traumatized by it. In

5

construing the statute to authorize a restraining order protecting the daughter as well, the court of appeal held, "[A] member of the immediate family of a stalking victim [citation] who suffers emotional harm, here a child, is a 'victim' for purposes of a post-conviction restraining order." (*Id.* at p. 88.) The court reasoned, "Here, daughter is a person who suffered emotionally and who was traumatized by appellant's conduct. She was the recipient of a previously issued civil restraining order that she carried on her person. Surely, this is a person who is within the 'wider net' of the second sentence of the statute. Construing such a person as a victim for purposes of a post-conviction restraining order is also consistent with the latest legal definition of 'victim': 'A person harmed by a crime, tort, or other wrong.' " (*Id.* at p. 91.)

The Attorney General argues that we should rely on the definition of "victim" in the California Constitution to include the named victim's immediate family members: "As used in this section, a 'victim' is a person who suffers direct or threatened physical, psychological, or financial harm as a result of the commission or attempted commission of a crime or delinquent act. The term 'victim' *also includes the person's spouse, parents, children*, siblings, or guardian, and includes a lawful representative of a crime victim who is deceased, a minor, or physically or psychologically incapacitated." (Cal. Const., art. I, § 28, subd. (e), italics added.) But that definition is expressly limited to "this section" of the Constitution, and no court has defined the term "victim" in section 136.2 or section 646.9 so broadly as to include any family member of the named victim without further conditions. Furthermore, that definition would conflict with the statutory definition of "victim" set forth in section 136, which requires "reason to believe that any crime as defined under the laws of this state or any other state or of the United States is being or has been perpetrated or attempted to be perpetrated" against the person. (§ 136.) As to section 646.9, that section was enacted before the voters approved Proposition 9, the "Victims' Bill of Rights," which established the broader definition of "victim" in the

California Constitution. We see no evidence that Proposition 9 was intended to modify the meaning of then-existing section 646.9.

Nonetheless, we conclude the record supports the issuance of the restraining order here. The record shows Oliveros would park his car on the street near Doe's residence and watch her walking her daughters to school. He also forced his way into Doe's home—the home where, based on Doe's pattern of accompanying the children to school, the daughters also lived. Substantial evidence supports the trial court's implied finding that Oliveros inflicted or attempted to inflict harm on the daughters through this conduct of surveillance and trespass. Oliveros also admitted he sent provocative photos of Doe to her husband. The trial court could reasonably infer that Oliveros inflicted or attempted to inflict emotional harm on the husband through this conduct. Substantial evidence thereby supports the trial court's implied findings that the immediate family members were "victims" under the statutory language.

Accordingly, we conclude the court had the authority to issue the restraining order protecting Doe's immediate family members in addition to Doe herself. We will affirm the order.

### III.    DISPOSITION

The order issuing the restraining order is affirmed.

_____

Greenwood, P. J.

WE CONCUR:

_____

Grover, J.

_____

Danner, J.

People v. Oliveros
No. H048488