Filed 2/15/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B309605 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA120941) |
| v. | |
| JAIME RODOLFO LOPEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Victor D. Martinez, Judge. Affirmed as modified; remanded with directions.

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr., and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

In August 2019, defendant and appellant Jaime Rodolfo Lopez was charged with seven felonies, including three counts of

forcible rape against Amalia C. (the mother of his two minor children). The case proceeded to trial in September 2020 during the global COVID-19 pandemic. At that time, the Los Angeles Superior Courts were operating under the safety protocols set forth in General Order No. 021 (eff. Sept. 10, 2020) which mandated, among other things, that all persons entering any courthouse wear a face mask covering the nose and mouth at all times. (See <https://www.lacourt.org/newsmedia/uploads/142020910185619202 0-GEN-021-00AdministrativeOrderofPJreCOVID-19091020.pdf> [as of Feb. 14, 2022], archived at <https://perma.cc/H6BY-4UAG>.)

After a jury trial in which all persons in the courtroom were masked, including witnesses, defendant was found guilty on six of the charges. The court imposed a 16-year prison sentence and a 10-year protective order prohibiting defendant from contact with Amalia and both children.

Defendant contends the court violated his constitutional right to confront witnesses by denying his pretrial motion to remain unmasked during trial and to have all witnesses testify without a face mask. Defendant also challenges the inclusion of his two minor children in the postconviction protective order.

We conclude defendant's rights under the Confrontation Clause of the Sixth Amendment were not violated. United States Supreme Court precedent establishes the right to face-to-face confrontation is not absolute. Rather, " ' "the Confrontation Clause reflects a preference for face-to-face confrontation at trial," ' [citation], a preference that 'must occasionally give way to considerations of public policy and the necessities of the case.' " (*Maryland v. Craig* (1990) 497 U.S. 836, 849 (*Craig*).) The mask requirement was necessary to further the public policy of ensuring the safety of everyone in the courtroom during a global pandemic of a highly infectious, potentially deadly virus. The procedure fairly balanced defendant's speedy trial rights with the government's need

2

to reduce the substantial risk of infection to everyone in the courtroom during the trial.

We also conclude the minor children were not properly included within the scope of the postconviction protective order imposed pursuant to Penal Code section 136.2, subdivision (i).

Accordingly, we remand with directions to the superior court to remove the two minor children as protected persons under the postconviction protective order and otherwise affirm the judgment as so modified.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with three counts of forcible rape (Pen. Code, § 261, subd. (a)(2); counts 1, 4 & 5), one count of injuring a spouse or cohabitant (§ 273.5, subd. (a); count 2), one count of making criminal threats (§ 422, subd. (a); count 3) and two counts of dissuading a witness (§ 136.1, subd. (b)(1); counts 6 & 7).

Defendant made a pretrial request to be relieved of the requirement to wear a face mask covering his nose and mouth during trial and also requested that all witnesses be allowed to testify without masks. The court denied defendant's motion but ordered that defendant, as well as both counsel, could stand and remove their respective masks when being introduced to the jury.

In accordance with General Order No. 021, all witnesses wore a face mask while testifying, including defendant when he testified in his own defense.

Amalia testified that she and defendant had been in a relationship for several years and lived in a small apartment with their two children and defendant's brother (we refer to Amalia and the children by their first names only to protect their privacy). Amalia testified to the incidents that occurred over the course of two days in May 2019. She explained the three separate rapes, how defendant physically assaulted her, choked her, hit her in the face,

3

pulled her hair and tore her undergarments off her body. She testified to defendant's threats to kill her and confirmed the accuracy of photographs showing the injuries she suffered to her face and her torn undergarments. Amalia also testified about telephone conversations with defendant while he was in jail and his efforts to pressure her to disavow the charges against him. Audio recordings of the telephone conversations were played for the jury.

Detective Eduardo Flores testified to his interactions with Amalia and confirmed she had visible injuries to her face and neck.

Wendeline Ruvalcaba, a registered nurse, testified to her examination of Amalia. She said Amalia was "very emotional" during the examination and had numerous injuries, including the existence of petechiae (tiny broken blood vessels) consistent with having been choked. Another registered nurse, Malinda Wheeler, also testified to Amalia's injuries that were consistent with manual strangulation.

Defendant's brother testified he lived with defendant and Amalia and denied ever seeing his brother hit or verbally abuse Amalia. He denied hearing any sounds of an argument or disturbance on the night and morning Amalia testified she was raped. He also denied seeing Amalia looking distressed or crying during that time.

Defendant testified that he and Amalia had consensual relations and that he had never abused her during their seven-year relationship. He admitted they argued on the dates she said he raped her but that it was Amalia who got angry with him. He denied hitting Amalia, choking her, pulling her hair, raping her, attempting to sodomize her, threatening her or saying any of the derogatory statements to which she testified.

The jury acquitted defendant on count 6 and found him guilty on all remaining charges. The court sentenced defendant to prison for 16 years, awarded 683 total days of presentence custody credits

4

and imposed various fines and fees. Citing Penal Code section 136.2, subdivision (i), the court also imposed a 10-year protective order, prohibiting defendant from having any contact, except through counsel, with Amalia and defendant's two minor children (Jesus and Ariadne). The court ordered that peaceful contact with the protected individuals would be possible if defendant obtained an appropriate family, juvenile or probate court order allowing visits.

This appeal followed.

## DISCUSSION

**1. Defendant's Rights Under the Confrontation Clause Were Not Violated.**

Defendant contends the court violated his constitutional right to confront witnesses because the jury was unable to properly judge the credibility of the witnesses and could not assess his own demeanor throughout the trial, due to the face masks.

We are not aware of any published California cases resolving this precise issue. However, numerous federal district courts have concluded that, due to the unique and substantial public health risks created by the ongoing global pandemic, the Confrontation Clause is not violated by having a witness testify in a criminal proceeding with a mask covering the nose and mouth. (See, e.g., *United States v. Maynard* (S.D.W.Va. Nov. 3, 2021, No. 2:21-cr-00065) 2021 U.S.Dist. Lexis 211943 (*Maynard*); *United States v. Holder* (D.Colo. Sep. 27, 2021, No. 18-cr-00381-CMA-GPG-01) 2021 U.S.Dist. Lexis 184017; *United States v. Clemons* (D.Md. Nov. 4, 2020, No. RDB-19-0438) 2020 U.S.Dist. Lexis 206221; *United States v. James* (D.Ariz. Oct. 15, 2020, No. CR-19-08019-001-PCT-DLR) 2020 U.S.Dist. Lexis 190783; & *United States v. Crittenden* (M.D.Ga. Aug. 21, 2020, No. 4:20-CR-7 (CDL)) 2020 U.S.Dist. Lexis 151950 (*Crittenden*).)

We agree with the reasoning in these federal decisions which rely on the public interest exception to the face-to-face confrontation

5

requirement discussed in *Craig, supra*, 497 U.S. 836. In *Craig*, the Supreme Court acknowledged the long line of precedent establishing that the face-to-face confrontation requirement embodied in the Sixth Amendment is not absolute. (*Craig,* at pp. 849–850.) *Craig* explained that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is *necessary to further an important public policy and only where the reliability of the testimony is otherwise assured.*" (*Id.* at p. 850, italics added [finding Confrontation Clause not violated where child sexual abuse victim was allowed to testify via one-way closed-circuit television].)

The court went on to say, "[a]lthough we are mindful of the many subtle effects face-to-face confrontation may have on an adversary criminal proceeding, the presence of these other elements of confrontation—oath, cross-examination, and observation of the witness' demeanor—adequately ensures that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony." (*Craig, supra*, 497 U.S. at p. 851.)

Applying *Craig* in a prepandemic case, the Ninth Circuit concluded there was no Confrontation Clause violation in allowing a confidential informant to testify in disguise. "[T]he reliability of the [confidential informant's] testimony was otherwise assured, because (1) he was physically present in the courtroom, (2) he testified under oath, thus impressing him with the seriousness of the matter and the possibility of penalty for perjury, (3) he was subject to cross-examination while [the defendant] could see him, (4) despite his disguise, the jury was able to hear his voice, see his entire face including his eyes and facial reactions to questions, and observe his body language. These are all key elements of one's demeanor that shed light on credibility. Thus, we hold that in this case, the

disguise in the form of a wig and mustache did not violate the Confrontation Clause." (*United States v. De Jesus-Casteneda* (9th Cir. 2013) 705 F.3d 1117, 1121, fns. omitted.)

*Crittenden*, *supra*, 2020 U.S.Dist. Lexis 151950 was decided in August 2020, just before the start of defendant's trial, at a time when there was no vaccine yet available to protect against the spread of COVID-19 and the best scientific evidence demonstrated the wearing of face masks was effective at reducing the spread of the virus and the risk of infection in indoor settings. In upholding the mask requirement there, *Crittenden* found both prongs of *Craig* were satisfied.

First, "the mask requirement is necessary to further an important public policy: ensuring the safety of everyone in the courtroom in the midst of a unique global pandemic. Without this procedure, everyone in the courtroom would face the risk of being infected with a lethal virus. The Court's masking requirement is based upon the best available scientific information and advice. . . . The wearing of the mask not only protects the wearer of the mask, but more significantly, protects others who may be in the same room with the person. . . . Given the [Center for Disease Control] recommendations, which are based on the best available science in this area, the Court finds that its social distancing and mask protocols are necessary and essential to protect the courtroom participants during a trial." (*Crittenden*, *supra,* 2020 U.S.Dist. Lexis 151950 at pp. *15–16, citations omitted.)

Moreover, the reliability of the testimony provided by masked witnesses was otherwise assured. "[U]nder the Court's mask procedure, witnesses against the Defendant will be physically present in the courtroom, they will testify under oath, and Defendant will be able to have these witnesses cross-examined in the open courtroom in front of the Defendant and the jurors. The Defendant and jury will also be able to observe the witnesses'

7

demeanor, although they will not be able to see their nose and mouth.  The Court finds that this restriction does not diminish the face-to-face nature of the confrontation contemplated by the Confrontation Clause." (*Crittenden*, *supra*, 2020 U.S.Dist. Lexis 151950 at pp. *17–18.)

Similarly here, the court's mask requirement furthered the public policy of protecting against the substantial health risks presented by the COVID-19 virus, particularly in an indoor setting like a courtroom.  The mask order not only protects the safety of the trial participants, but public health more broadly by seeking to limit the spread of the virus.

We also conclude the mask requirement did not meaningfully diminish the face-to-face nature of the witness testimony.  The witnesses testified in court, under oath and were subject to unfettered cross-examination by counsel.  The mask requirement did not significantly obstruct the jury's ability to assess witness demeanor.  The jurors could see the witnesses' eyes, hear the tone of their voices, and assess their overall body language.  "To whatever slight extent masks impinge on [a defendant's] Confrontation Clause right to see a witness's full facial expressions, requiring them is justified by important public policy interests to protect the health and safety of those in the courthouse while allowing court functions to proceed during a pandemic." (*Maynard*, *supra*, 2021 U.S.Dist. Lexis 211943 at p.*6.)

Defendant argues the court did not consider alternatives such as allowing witnesses to testify remotely without a mask.  Nothing in the record demonstrates that defendant asked the court to consider alternatives.  In any event, defendant's argument that having witnesses testify remotely from another location would have been preferable to testifying in court with a mask is not supported by Sixth Amendment jurisprudence.

8

Indeed, as *Crittenden* aptly noted, the "essence of the confrontation right is the guarantee that one's accuser must appear in the defendant's presence under oath while being subjected to cross-examination knowing that the reliability of his testimony will be closely scrutinized by the factfinder. That is the face-to-face confrontation contemplated by the Confrontation Clause. The mask requirement here does not diminish that confrontation or the reliability of a witness's testimony in a material way, and it is necessary to protect the trial participants and spectators from COVID-19." (*Crittenden*, *supra*, 2020 U.S.Dist. Lexis 151950 at p. *22.)

We are also not persuaded by defendant's argument the court could have reconfigured the courtroom to allow witnesses to testify maskless and be socially distanced from all other courtroom participants. Defendant conceded at oral argument that his argument was based on speculation. Nothing in the record indicates the particulars of the courtroom here allowed for such accommodation. Indeed, the record shows the court was already using much of the space in the courtroom to allow for jurors to be socially distanced, sitting in the audience chairs rather than all being confined in the traditional jury box.

Defendant pointed to a handful of orders from courts in other counties allowing trials to proceed with witnesses testifying maskless. That all courtrooms in every county throughout the state have not adhered to identical procedures during this pandemic only underscores the need for deference to a trial court's inherent authority and discretion to control the proceedings before it (Code Civ. Proc., § 128).

Defendant's argument also ignores the fact there were numerous other factors relevant to the jury's assessment of witness credibility, none of which was impacted or diminished by the mask requirement such as (1) how well the witness could see, hear, or

9

otherwise perceive the things about which the witness testified, (2) how well the witness was able to remember and describe what happened, (3) whether the witness answered questions directly, (4) whether the witness's testimony may have been influenced by bias or prejudice in the form of a personal relationship with someone involved in the case, or a personal interest in how the case was decided, (5) any past consistent or inconsistent statements by the witness, (6) the existence of other evidence that proved or disproved any fact about which the witness testified, and (7) whether the witness admitted to being untruthful about any aspect of his or her testimony.  (See, e.g., CALCRIM No. 226.)

We decline to adopt a rule that would infringe on the inherent authority of trial courts to promulgate procedures best suited for their particular courtrooms as they confront the challenges presented by the global pandemic.  We find the trial court in this case did not abuse its discretion or fail to protect defendant's constitutional right to a fair trial.

2.     **The Minor Children Must Be Removed From the Postconviction Protective Order.**

At sentencing, the court imposed a protective order, citing Penal Code section 136.2, subdivision (i)(1) as its authority for doing so.  The court prohibited defendant for a period of 10 years from having any contact or communications with Amalia and the two minor children, except through counsel.  The prosecutor conceded the children were not direct victims and were asleep during the domestic violence incidents but argued the court could include them in the protective order pursuant to section 136.2, subdivision (a)(2). The prosecutor further argued the court should permit the family court to modify the protective order to permit contact with the children if the family court later found such contact was appropriate.  The court agreed to modify the order so that defendant could have peaceful contact with the children if he

10

obtained a family, juvenile or probate court order permitting visits. The court reiterated it was imposing the protective order pursuant to subdivision (i)(1). The sentencing minute order also states the court issued the protective order pursuant to subdivision (i)(1).

Defendant contends the court had no authority to include the children in the postconviction protective order because, as all parties agreed, they were not victims within the meaning of the statutory language. We agree.

Courts "have construed [Penal Code] section 136.2, subdivision (a) to authorize imposition of protective orders only during the pendency of the criminal action. [Citations.] Thus, once the defendant is found guilty and sentenced, the court's authority to issue a protective order under section 136.2, subdivision (a) generally ceases." (*People v. Beckemeyer* (2015) 238 Cal.App.4th 461, 465 (*Beckemeyer*); accord, *People v. Delarosarauda* (2014) 227 Cal.App.4th 205, 210 [former § 136.2, subd. (a)(6) now codified at subd. (a)(1)(F) "does not authorize postconviction protective orders"].)

However, in 2011, Penal Code section 136.2 was amended "creating an exception to the preconviction limitation of a section 136.2 restraining order for domestic violence cases. (Stats. 2011, ch. 155, § 1.) Effective January 1, 2012, the Legislature added section 136.2, subdivision (i) to the statutory scheme so that a 10-year postconviction protective order would be permissible when a defendant was convicted of a domestic violence offense." (*Beckemeyer, supra,* 238 Cal.App.4th at p. 465, italics & fn. omitted.)

Subdivision (i)(1) of Penal Code section 136.2 now expressly provides for the imposition of postconviction protective orders at the time of sentencing. (*Ibid.* ["When a criminal defendant has been convicted of a crime involving domestic violence . . . , the court, at the time of sentencing, shall consider issuing an order restraining

11

the defendant from any contact with a victim of the crime."].)  Such orders are limited to defendants convicted of crimes that qualify as " 'domestic violence' " and where the protected person qualifies as a "'victim' " of said crime(s).  (*Beckemeyer*, *supra*, 238 Cal.App.4th at p. 466.)

Here, the parties agree the minor children were not victims of a crime of domestic violence within the meaning of Penal Code section 136.2, subdivision (i)(1).  They were present but asleep. " 'Victim' " for purposes of the statutory scheme is defined as "any natural person with respect to whom there is reason to believe that any crime as defined under the laws of this state or any other state or of the United States is being or has been perpetrated or attempted to be perpetrated."  (§ 136, subd. (3).)

Respondent, taking up the argument of the prosecutor below, has argued the definition of victim is broader, citing to the language in Penal Code section 136.2, subdivision (a)(2) which states that "[f]or purposes of this subdivision, a minor who was not a victim of, but who was physically present at the time of, an act of domestic violence, is a witness and is deemed to have suffered harm within the meaning of paragraph (1)."  By its own terms, section 136.2, subdivision (a)(2) *only* pertains to preconviction protective orders imposed under subdivision (a), not postconviction orders imposed under subdivision (i).

As no other basis for including the minor children within the scope of the postconviction protective order has been advanced, the protective order must be modified to protect the only victim as defined by Penal Code section 136.2, subdivision (i)(1), Amalia.

## DISPOSITION

The minor children identified as Jesus and Ariadne shall be deleted as protected persons under the postconviction protective order.  On remand, the superior court is directed to remove their

names from the protective order.  As so modified, the judgment of conviction is otherwise affirmed in its entirety.


GRIMES, Acting P. J.

WE CONCUR:


STRATTON, J.


WILEY, J.