Filed 5/13/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> BRANDON HORTON, <br><br> Defendant and Appellant. | B337373 <br><br> (Los Angeles County <br> Super. Ct. No. BA470901) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Renee Korn, Judge.  Affirmed as modified.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan S. Pithey, Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

**INTRODUCTION**

Brandon Horton was convicted of stalking and making criminal threats against Seiko H.  He was acquitted of making criminal threats against Seiko's father, John H.  At sentencing,

the trial court issued a 10-year protective order under Penal Code[1] section 646.9, subdivision (k), prohibiting Horton from having any contact with both Seiko and John, and an order prohibiting Horton from possessing any deadly or dangerous weapons.  On appeal, Horton challenges the portion of the protective order naming John as a protected person, and the order directing Horton not to possess any deadly or dangerous weapons.  We conclude the trial court did not err in including John as a protected person in the protective order, because there was sufficient evidence that Horton committed or attempted to commit some harm against John.  However, the court did err in extending the weapons prohibition beyond firearms to any deadly or dangerous weapon.  We accordingly modify the judgment to strike the order prohibiting Horton from possessing any deadly and dangerous weapons, and affirm the judgment as modified.

### FACTUAL AND PROCEDURAL BACKGROUND

**1.    Charges**

In an amended information, the Los Angeles County District Attorney's Office charged Horton with one count of making criminal threats against Seiko (§ 422, subd. (a); count 1), one count of making criminal threats against John (§ 422, subd. (a); count 2), and one count of stalking Seiko (§ 646.9, subd. (a); count 3).  It was also alleged that the charged offenses involved a number of aggravating factors under California Rules of Court, rule 4.421(a)–(b).

---

[1]    Unless otherwise stated, all further undesignated statutory references are to the Penal Code.

## 2. Evidence at trial

Horton and Seiko attended high school together in the early 2000's, but they never had a personal relationship. In around 2015, Horton began showing up at Seiko's job and residence. He also posted messages on Seiko's social media accounts, and left notes on her car that initially expressed a romantic interest in her, but then became increasingly threatening in nature. Horton typically placed the notes on Seiko's car when it was parked outside her workplace or the duplex that she shared with her parents. However, in 2016, Seiko's father, John, found one threatening note addressed to Seiko on his car in the parking lot where he worked. After receiving that note, John reported Horton's conduct to the police.

In 2017, Horton pled no contest to a charge of stalking Seiko. As part of that criminal case, Seiko obtained a protective order that prohibited Horton from having any contact with her for 10 years.

Starting in April 2018, Horton resumed his harassing conduct toward Seiko. Over the next several months, he used anonymous Instagram accounts to send her hundreds of messages. These messages included the statements: "You're going to be on a respirator when I get through"; "You are going to die for what you have done"; "If you really [*sic*] scared of a muthafucker, why would you park your car in the driveway and block yourself in"; "[F]uck the bullshit ass cameras you got on your fucking house"; "I can't wait to kill your ass"; and "I should throw a cocktail in that muthafucker at [Seiko's home address]."

In July 2018, Seiko was sitting in her car when she received a social media post of a photo of her in the car taken in real time. The photo included the caption, "You think it's a

3

fucking joke, huh." On other occasions, Horton sent Seiko an image of an expended bullet with the caption, "Bullets from my 40 cal, that belong to you bitch," and an image of a gun with the caption, "Here it is. Try me. You tried me." Horton also sent Seiko video recordings that he had taken of the area outside the duplex where she and her parents lived. The video posts included the comments, "You don't want no beef," "You're going to die," and "I'm on your block, you outta room, best believe that part."

Some of the Instagram messages that Horton sent to Seiko included references to her father, John. These messages stated: "Your daddy's a bitch"; "So your burster ass daddy, lied to the police again"; "I'll shoot your daddy in the mutherfucking head, making that mutherfucking mistake with me"; and "Tell your boyfriend my gun don't jam and your daddy need to call AIG for his face value pay out." At trial, John testified that he felt threatened by the messages and feared for his life. He also testified that he received prior threats in the course of his job as a sheriff's deputy, but he regarded Horton's conduct differently. John stated, "I didn't know who this person was. Never met this person. Didn't understand where there [*sic*] this was all coming from. In addition to that, this person knows where I live. He knows where my daughter lives. He's been to my house. He had a screenshot of her away from the home in the vehicle. So, yeah, there was a difference. I felt a difference there."

### 3. Jury verdict and sentencing

The jury found Horton guilty of making criminal threats against Seiko (count 1) and stalking Seiko (count 3). As to those counts, the jury found true the aggravating factors that the offense involved threats of great bodily harm or other acts

4

revealing a high degree of cruelty, viciousness, or callousness, and that the act was carried out with planning, sophistication, or professionalism. As to the stalking count, the jury also found true the aggravating factor that Horton was armed with or used a gun in committing the offense. The jury found Horton not guilty of making criminal threats against John (count 2).

The trial court sentenced Horton to state prison for a total term of five years, eight months. The court also awarded Horton 3,780 custody credits, resulting in a time-served sentence. At the sentencing hearing, the court issued a 10-year protective order under section 646.9, subdivision (k), that named both Seiko and John as protected persons. The court also ordered Horton "not to own, use, threaten to use, possess, buy, or sell any deadly or dangerous weapons, firearms, firearm feeding device, or ammunition."

Horton filed a timely appeal.

## DISCUSSION

**1.      Protective order naming John as a protected person**

On appeal, Horton contends the protective order issued by the trial court was unauthorized because it included Seiko's father, John, as a protected person. In particular, Horton claims that a protective order issued under section 646.9 can only apply in favor of the victim, not the victim's immediate family, and that John was not a victim because Horton was not convicted of any crime against him. We conclude the trial court did not err in including John as a protected person in the challenged order.

The question of whether a statute authorizes a criminal protective order is subject to our de novo review. (*Babalola v. Superior Court* (2011) 192 Cal.App.4th 948, 956) With respect to whether a trial court properly issued a criminal protective order,

5

" ' "[w]e imply all findings necessary to support the judgment, and our review is limited to whether there is substantial evidence in the record to support these implied findings." ' " (*People v. Therman* (2015) 236 Cal.App.4th 1276, 1279.)

Section 646.9, subdivision (k), governs the issuance of postconviction protective orders in stalking cases. It states that the sentencing court "shall consider issuing an order restraining the defendant from any contact with the victim, that may be valid for up to 10 years, as determined by the court. It is the intent of the Legislature that the length of any restraining order be based upon the seriousness of the facts before the court, the probability of future violations, the safety of the victim and their immediate family, and the information provided to the court pursuant to Section 273.75." (*Id.*, subd. (k)(1).) The statute itself does not define the term "victim."

In *People v. Clayburg* (2012) 211 Cal.App.4th 86 (*Clayburg*), a majority of the court held that "a member of the immediate family of a stalking victim . . . who suffers emotional harm . . . is a 'victim' for purposes of a postconviction restraining order" under section 646.9, subdivision (k). (*Clayburg*, at p. 88.) The defendant in *Clayburg* was convicted of stalking her former husband and the father of their minor daughter. (*Id.* at p. 88.) While the daughter was not named as a victim in the stalking charge, she testified that she witnessed some of the defendant's conduct, which caused her to suffer fear and anxiety. (*Id.* at p. 90.) At sentencing, the trial court issued an order prohibiting the defendant from having any contact with the daughter for a 10-year period. (*Id.* at p. 88.) On appeal, the defendant argued the order was unauthorized because the daughter was not a "victim" of the stalking as specified in the first sentence of

6

section 646.9, subdivision (k)(1).  (*Clayburg*, at p. 90.)  In rejecting this argument, the majority reasoned:  "[I]t is apparent that the Legislature wants the judiciary to protect the child of a named stalking victim.  The statute is 'remedial' and consistent with time-honored precedent, must be liberally construed to effectuate the object and purpose of the statute and to suppress the mischief at which it is directed.  [Citation.]  To strictly construe the statute and read the first sentence to the exclusion of the second would defeat Legislative intent and defeat justice. . . .  The second sentence must be read, not in isolation, but in conjunction with the first sentence."  (*Id*. at p. 91.)  Reading the first and second sentences together, the majority concluded the daughter was entitled to the protection afforded by section 646.9, subdivision (k)(1), because she was "a person who suffered emotionally and who was traumatized by [the defendant's] conduct."  (*Clayburg*, at p. 91.)

In *People v. Delarosarauda* (2014) 227 Cal.App.4th 205 (*Delarosarauda*), the Court of Appeal considered whether similar language in section 136.2, subdivision (i), which governs the issuance of protective orders in domestic violence cases, applied to a named victim's immediate family members.  (*Delarosarauda*, at pp. 211–212.)  At that time, section 136.2, subdivision (i), provided in relevant part:  "In all cases in which a criminal defendant has been convicted of a crime involving domestic violence . . ., the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with the victim. . . .  It is the intent of the Legislature in enacting this subdivision that the duration of a restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of a victim and

7

his or her immediate family." (Former § 136.2, subd. (i)(1).) As used in the chapter containing section 136.2, the term " '[v]ictim' means any natural person with respect to whom there is reason to believe that any crime as defined under the laws of this state or any other state or of the United States is being or has been perpetrated or attempted to be perpetrated." (§ 136, subd. (3).)

In *Delarosarauda*, following the defendant's conviction for offenses involving domestic violence, the trial court issued a 10-year protective order that named the domestic violence victim as well as her two children as protected persons. (*Delarosarauda*, *supra*, 227 Cal.App.4th at pp. 208–209.) The Court of Appeal held the protective order was unauthorized as to the children, reasoning that "[u]nder the plain language of section 136.2, subdivision (i)(1), a postconviction protective order is limited to restraining the defendant from contact with a 'victim,' that is, a 'natural person with respect to whom there is reason to believe that any crime . . . is being or has been perpetrated or attempted to be perpetrated.' (§ 136, subd. (3).)" (*Id.* at p. 211.) The court concluded that "absent evidence from which the trial court could reasonably conclude that [the defendant] had harmed or attempted to harm [the children], the court lacked authority to issue the no-contact protective order as to the children under section 136.2, subdivision (i)(1)." (*Id.* at p. 212.) In reaching this conclusion, the court disagreed with the *Clayburg* majority's interpretation of the term "victim" as used in section 646.9, subdivision (k)(1). (*Delarosarauda*, at p. 211.) The *Delarosarauda* court also distinguished *Clayburg* on the facts, noting that the defendant in *Clayburg* "stalked the named victim and the victim's child, causing both to suffer emotional harm," while there was no evidence that the children in this case "were

similarly targeted or harmed." (*Delarosarauda*, at p. 212; see also *People v. Lopez* (2022) 75 Cal.App.5th 227, 237 [victim's children did not qualify as victims within the meaning of section 136.2, subd. (i)(1), where they were asleep during the domestic violence incidents].)

In *People v. Race* (2017) 18 Cal.App.5th 211 (*Race*), the Court of Appeal also considered whether a protective order issued under section 136.2, subdivision (i), may include a person who was not a victim of any offense of which the defendant was convicted. The defendant in *Race* originally was charged with committing child molestation offenses against both his niece and daughter. (*Race*, at p. 215.) As part of a plea agreement, the defendant pled no contest to the charge involving the niece, and the trial court dismissed the charge involving the daughter. (*Ibid*.) In addition to sentencing the defendant on the charge involving the niece, the court issued a 10-year protective order as to both the niece and the daughter under section 136.2, subdivision (i)(1). (*Race*, at p. 213.) On appeal, the defendant contended the court lacked the authority to include his daughter in the protective order because he did not plead to any offense involving her. (*Ibid*.) In rejecting this claim, the Court of Appeal construed the term "victim" as used in section 136.2 "broadly to include any individual against whom there is 'some evidence' from which the court could find the defendant had committed or attempted to commit some harm within the household." (*Race*, at p. 219.) The *Race* court further held that, "in considering the issuance of a criminal protective order, a court is not limited to considering the facts underlying the offenses of which the defendant finds himself convicted," but rather "may consider all competent evidence before it." (*Id*. at p. 220.) Based on the

information contained in the police report and the criminal complaint filed against the defendant, there was "sufficient evidence for the [trial] court to conclude that [the] defendant's daughter had been harmed within the household such that a protective order against him should issue." (*Id.* at p. 219; see also *People v. Beckemeyer* (2015) 238 Cal.App.4th 461, 467 [victim's adult son qualified as a victim for purposes of section 136.2, subd. (i)(1), where he was physically assaulted by defendant during the domestic violence incident].)

In this case, the trial court issued a 10-year protective order under section 646.9, subdivision (k), that named both Seiko and John as victims and protected persons. Relying on *Delarosarauda, supra*, 227 Cal.App.4th 205, Horton asserts the court lacked the authority to include John in the protective order because section 646.9, subdivision (k)(1), only applies to the stalking victim, not the victim's family members. We disagree. The *Delarosarauda* court did not hold that a "victim" for purposes of a postconviction protective order must be the named victim of a crime of which the defendant was convicted. Rather, the *Delarosarauda* court recognized that the similarly-worded section 136.2, subdivision (i)(1), could apply to a person who was "targeted or harmed" by the defendant in the commission of a domestic violence offense against the named victim. (*Delarosarauda*, at p. 212.) Moreover, as the *Race* court explained, the term "victim" as used in section 136.2, subdivision (i)(1), is broad enough "to include a victim of a charged count of which defendant does not stand convicted so long as the court had some competent evidence before it with which to conclude there was reason to believe the individual was a victim of a broadly defined domestic-violence-related offense

10

involving harm or attempted harm such that a criminal protective order should be issued." (*Race, supra*, 18 Cal.App.5th at p. 216.) Therefore, the fact that Horton did not stand convicted of a specific offense against John did not preclude the trial court from issuing a protective order that named John as a protected person. Rather, the trial court was authorized to include John in the protective order so long as there was " 'some evidence' from which the court could find [Horton] had committed or attempted to commit some harm" against him. (*Ibid.*)

Here, the evidence was sufficient to support a finding that Horton committed or attempted to commit some harm against John when he stalked Seiko. The evidence showed that Horton sent Seiko social media messages that included threatening language about John, such as "I'll shoot your daddy in the mutherfucking head" and "your daddy need to call AIG for his face value pay out." John testified that, when Seiko showed him one of the messages, he felt threatened and feared for his life because Horton knew where John and his daughter lived and had been to their house. In addition, John testified that the security camera system that he installed outside the family's house recorded Horton lurking around the residence and placing handwritten notes on Seiko's car at night. John recalled that he was in the home when these incidents took place, and that he found some of the notes that were left on Seiko's car in the morning. John also recalled that, on a prior occasion, he found a threatening note to Seiko that had been left on his car outside his place of work.

In acquitting Horton of making criminal threats against John as charged in count 2, the jury necessarily found that the People failed to meet their burden of proving beyond a reasonable

11

doubt that Horton committed the charged offense. However, in deciding whether to include John in a postconviction protective order under section 646.9, subdivision (k), the trial court was not required to apply a beyond-a-reasonable-doubt standard of proof. (See *Race*, *supra*, 18 Cal.App.5th at p. 219; *Delarosarauda*, *supra*, 227 Cal.App.4th at p. 212.) The court also was not limited to considering the facts underlying the offenses of which Horton was convicted, but rather was entitled to "consider all competent evidence before it." (*Race*, at p. 220.) Here, the totality of the record provided sufficient competent evidence from which the court reasonably could find that Horton harmed or attempted to harm John when he stalked Seiko. The trial court accordingly did not err when it issued the protective order naming both Seiko and John as protected persons.

**2. Order prohibiting Horton from possessing any deadly or dangerous weapons**

At sentencing, the trial court ordered Horton "not to own, use, threaten to use, possess, buy, or sell any deadly or dangerous weapons, firearms, firearm feeding device, or ammunition." Both the sentencing minute order and the abstract of judgment include a similar order stating, "Do not own, use, or possess any dangerous or deadly weapons, including any firearms, knives, or other weapons." On appeal, Horton contends, and the People concede, that the order prohibiting him from possessing any deadly or dangerous weapons must be stricken as unauthorized. We agree.

A person previously convicted of a felony is prohibited from owning, purchasing, receiving, or possessing a firearm (§ 29800, subd. (a)(1)) or ammunition (§ 30305, subd. (a)(1)). Where, as here, the defendant has been convicted of a felony, the court must

12

provide notice of these restrictions at the time of sentencing. (§ 29810, subd. (a)(2).)  As Horton acknowledges, the trial court correctly advised him at sentencing that he was prohibited from owning or possessing any firearms, ammunition, and ammunition feeding devices.  However, these statutory restrictions apply only to firearms and ammunition, and do not speak to any other "deadly" or "dangerous" weapons.  Thus, as set forth in the court's order, the prohibition on owning or possessing "any deadly or dangerous weapons" is overbroad, and appears to apply to a variety of lawful items, such as kitchen utensils and common tools, that could conceivably cause death or bodily injury.  Indeed, the court's minute order and abstract of judgment state that "knives" are among the prohibited weapons.

While Horton may be prosecuted and convicted of a felony in the future if he ever "owns, purchases, receives, or has in possession or under custody or control any firearm" (§ 29800, subd. (a)(1)), the order prohibiting him from owning, using, or possessing any deadly or dangerous weapons constitutes an unauthorized sentence.  The abstract of judgment accordingly must be modified to strike the order to "not own, use, or possess any dangerous or deadly weapons, including any firearms, knives, or other weapons."  The remaining orders in the abstract of judgment regarding firearms, including the order advising Horton that he is "prohibited from owning, purchasing, receiving, possessing or having, under their custody or control, any firearms, ammunition, and ammunition feeding devices" were properly issued and need not be modified.

## DISPOSITION

The judgment is modified to strike the order to "not own, use, or possess any dangerous or deadly weapons, including any

13

firearms, knives, or other weapons." As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment, and to forward a certified copy to the Department of Corrections.

VIRAMONTES, J.

WE CONCUR:

GRIMES, Acting P. J.

WILEY, J.

14