Filed 6/23/25

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARK RICHARD WALTS,<br><br>    Defendant and Appellant. | F087907<br><br>(Super. Ct. No. CRF68749)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tuolumne County.  Laura Leslie Krieg, Judge.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary, Lewis A. Martinez, and Joseph Penney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Mark Richard Walts was convicted by a jury of continuous sexual abuse of a child.  The trial court sentenced defendant to a term of 12 years imprisonment. The trial court also ordered defendant to undergo an HIV test and to stay away from his

ex-wife and three of his children.  On appeal, defendant contends the court:
(1) reversibly erred by permitting T.W.'s mother to testify that it was possible that
defendant purchased clothes for T.W. without the mother's knowledge; (2) erred by
ordering defendant to take an HIV test; and (3) erred by ordering defendant to have no
contact with his ex-wife and two of his children.  We affirm defendant's conviction but
conclude that the court erred by ordering defendant to undergo an HIV test and by
ordering defendant to have no contact with his ex-wife and two of his children.

## PROCEDURAL BACKGROUND

On December 2, 2022, the Tuolumne County District Attorney filed an
information charging defendant with one count of continuous sexual abuse of a child
(Pen. Code, § 288.5, subd. (a);[1] count 1), and three counts of lewd conduct against a child
(§ 288, subd. (a); counts 2, 3, 4).  The information also alleged as an enhancement to
counts 2, 3, and 4 that defendant had substantial sexual conduct with the victim.
(§ 1203.066, subd. (a)(8).)  For each count, the victim was identified only as
"Confidential Victim" but was actually defendant's daughter, T.W.

A jury trial began on January 31, 2024, and concluded on February 2, 2024.  The
jury found defendant guilty on all counts but hung on the substantial sexual conduct
enhancements.  The prosecution decided not to retry the enhancements.

On April 11, 2024, the trial court conducted a sentencing hearing.  The court
reversed defendant's convictions on counts 2, 3 and 4.  The court then sentenced
defendant to a term of 12 years' imprisonment on count 1.  The court also ordered
defendant to undergo HIV testing pursuant to section 1202.1 and issued a protective order
pursuant to section 136.2, subdivision (i)(1) (§ 136.2(i)(1)).[2]  The protective order

---

[1]     All further statutory references are to the Penal Code unless otherwise noted.

[2]     The parties note the protective order has a box checked by section 646.9,
subdivision (k) as the basis for the order.  Section 646.9 in part provides for protective
orders in circumstances involving stalking.  (§ 646.9, subd. (k).)  The parties agree, and

2.

required defendant to have no contact with T.W., defendant's ex-wife Tina Walts (Tina),[3] defendant's minor daughter, W.W., and defendant's adult son, M.W., for 10 years.

On April 18, 2024, this court received a notice of appeal from defendant that was dated March 29, 2024.

## GENERAL FACTUAL BACKGROUND

Defendant was born in 1953, and T.W. was born in 2007. At all relevant times, T.W. lived with defendant and her mother Tina.

### Disclosure

On February 21, 2022, T.W. was at the house of her friend, N.G. T.W. told N.G. and N.G.'s family that defendant had abused her for multiple years. T.W. also told N.G. that defendant would make her run around the house in skimpy clothes. N.G.'s parents called the police, and the police initiated an investigation.

### Investigation

The police had T.W. place a pre-text call to defendant in order for T.W. to confront defendant and obtain admissions from him. During the pre-text call, defendant told T.W. multiple times to talk to a professional. However, defendant also admitted that his touching of T.W.'s buttocks was inappropriate. Defendant observed that T.W. did not push his hands away when he grabbed her buttocks, unlike a recent instance in which W.W. pushed his hands away from her buttocks while he was trying to help W.W. fall asleep. Further, after T.W. told defendant she believed his touching or grabbing her buttocks was sexual, defendant replied, "Maybe it was. Maybe I'm lying to myself." Within minutes after the pretext call, defendant sent two text messages to T.W.: "Please

so do we, that section 646.9 has no application to this case and the actual basis for the protective order is section 136.2, subdivision (i). Accordingly, we will review the protective order under the standards of section 136.2, subdivision (i) and require the court to correct the protective order to reflect the correct statutory basis.

[3] Because Tina Walts shares the same initials as T.W., we will refer to Tina Walts as "Tina" to avoid confusion. No disrespect is intended.

3.

just don't give mommy ammo to shoot me right now;" and "We, mommy and I, are going through a divorce that is nasty."

Shortly after the pre-text call, defendant was interviewed by a police detective. During the interview, defendant admitted that he kissed T.W.'s ear and grabbed T.W.'s buttocks. Defendant said that he had a problem and that his hands could not be near T.W.'s buttocks. Defendant admitted it was a mistake to grab T.W.'s buttocks. Defendant told the detective he did not think T.W. was making up the allegations of abuse because he believed that children do not make up such allegations. Defendant also explained that, when talking about inappropriate conduct, culture and politics all swing or change, which the detective took to mean that defendant's conduct would have been viewed as appropriate in a different time. Defendant said that he did not know how many times he grabbed T.W.'s buttocks, but it was not a "regular thing," and it only happened if Tina was not there. After the detective informed defendant that he (the detective) had overheard the pre-text call, defendant said that it was possible that his conduct was sexual but also stated that "anything was possible." Defendant did not explain to the detective that he was following any training regarding child molestation during the pre-text call, nor did he give any explanation about what he meant by agreeing that it was a mistake to touch T.W.'s buttocks or that it only occurred when Tina was not present. After the interview, defendant was arrested.

### Trial

T.W. testified that beginning at about age five, defendant would lay down in bed and put T.W. on his chest while she was probably wearing panties and a T-shirt and then grab, squeeze, or massage her buttocks with both hands from anywhere between 10 and 30 minutes. Defendant would tell T.W. she would understand or be grateful for what he was doing when she got older. Although T.W. was unable to provide a specific number, she testified defendant would often touch or grab her buttocks when she was between the ages of five and nine. T.W. explained that she initially did not know that defendant was

4.

doing something improper, but that changed when defendant kissed her neck and kissed and licked her ear one time. T.W. then began feeling a bit uneasy around defendant. T.W. testified that defendant would buy her provocative dresses, and she would feel uncomfortable when he would have her wear such dresses as a condition to go places she wanted to go. Although defendant did not ask her "to do anything" or to take her clothes off, T.W. felt he looked at her in a sexual way. T.W. decided to disclose defendant's behavior because she did not want him to do the same thing to her little sister, W.W. W.W. was six years old when T.W. confided in N.G.

Defendant testified he had participated in child molestation training through Parents United in an effort to support his previous wife, who herself had been the victim of childhood molestation. The training included validating a child's statements about molestation, keeping the child talking, not arguing with or contradicting the child, and attempting to get help for the child. Defendant explained this is what he was doing during the pre-text call (instead of arguing with T.W. or denying her allegations) because he believed that someone else had actually molested her. Defendant also denied any sexual motivation or intent in his conduct towards T.W. and also testified that he had conversations with T.W. about molestation and potential predators. Defendant believed that he was being manipulated by the investigating detective and attempted to address some of his statements to the detective. Defendant testified that he did not touch T.W.'s buttocks improperly, and that when he told the detective it only happened when Tina was not present, he meant that T.W.'s allegations could only reference situations in which he had to put T.W. to bed because Tina was not home and that he may have touched T.W.'s buttocks in the process. Defendant testified that he had inadvertently put has hand on W.W.'s buttocks while trying to put her down to sleep. Further, when he said it was a mistake to grab T.W.'s buttocks, defendant meant it was a mistake if he actually did so; and that when he said his conduct was inappropriate, defendant only meant to "piss off" the detective because he was mad.

5.

## DISCUSSION

**I.     Testimony Concerning the Purchase of Clothing for T.W.**

### A.     *Parties' Arguments*

Defendant argues the trial court should have sustained his objection of speculation to a question to Tina about whether it was possible that defendant purchased clothing for T.W. without Tina's knowledge.  Defendant argues the question was improper because it permitted the jury to surmise that he purchased provocative clothing for T.W., even though Tina's testimony had no foundation for such an inference.  Defendant argues the error was prejudicial because this was a close case between the believability of defendant and T.W., and the prosecutor relied on Tina's speculative testimony during closing argument.

The People argue the trial court did not abuse its discretion.  The evidence showed that Tina was defendant's spouse, was familiar with T.W.'s wardrobe, and had knowledge of the family's opportunities, activities, and possessions.  Further, the People contend that Tina did not give any speculative opinion because she testified there were instances in which defendant and T.W. would shop by themselves.  Alternatively, the People argue any error was harmless because the evidence of guilt was strong and defense counsel effectively addressed the issue during recross-examination.

### B.     *Additional Background*

During trial, T.W. testified defendant would make her wear provocative or revealing clothes.  In anticipation of this testimony, defense counsel had the following exchange with Tina about the purchase of T.W.'s clothing:

> "Q.     Do you recall who was the primary person who purchased clothes for [T.W.]?
>
> "A.     Generally me.
>
> "Q.     Generally you.  [¶]  You'd take her shopping or you'd purchase the clothes?

"A.    Yes.

"Q.    And would you say that all the clothes that you purchased her would be appropriate for her age at the time?

"A.    Yes.  [¶] … [¶]

"Q.    Just to be clear, when you say that you were the one that bought the majority of her clothing, was there ever a time where you experienced [defendant] buying [T.W.] clothing?

"A.    Actually buying her clothing?  No.

"Q.    Yeah.

"A.    He would be shopping with us, yes.

"Q.    But he wasn't the one picking out the clothes or buying the clothes or anything like that?

"A.    No.  [¶]  There were occasions when he would buy or pick out outfits for her.

"Q.    Okay.  But you were there and purchased with them, and you approved of the clothing that was purchased?

"A.    Yes."

On redirect, the prosecutor and Tina had the following exchange, which included an objection from defense counsel:

"Q.    Okay.  And one other question:  Are there times – is it possible there were times when [defendant] went shopping without you and perhaps he purchased things for [T.W.] without you knowing?

"[DEFENSE COUNSEL]:   Objection.  Speculation, calls for speculation.

"THE COURT:   Overruled.

"A.    Oh, yeah.  There were occasions when he would go buy, you know – you know, they would go by themselves."

Finally, on recross-examination, defense counsel and Tina had the following exchange:

7.

"Q.      You said that sometimes there may have been a time where [defendant] bought [T.W.] clothing.  Did you always see the clothing?

"A.      Well, yeah.

"Q.      Okay.  And so, therefore, whatever was bought and whatever she had you approved of; is that fair to say?

"A.      Sure."

### C.      *Legal Standard*

"Speculation" is "[t]he practice or an instance of theorizing about matters over which there is no certain knowledge."  (Black's Law Dict. (12th ed. 2024).)  A question that " ' ask[s] a lay witness to testify to facts that the witness has not personally observed, or to state an opinion not based on his or her own observations, calls for speculation and conjecture …."  (*People v. Rodriguez* (2014) 58 Cal.4th 587, 631.)  Because the "testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter" (Evid. Code, § 702, subd. (a)), "[n]o witness may give testimony based on conjecture or speculation" (*People v. Chatman* (2006) 38 Cal.4th 344, 382).  Rulings on objections that a question calls for speculation are reviewed for an abuse of discretion.  (*People v. Thornton* (2007) 41 Cal.4th 391, 429; *Rodriguez*, at p. 631.)  A ruling may constitute an abuse of discretion if it is so erroneous that it falls outside the bounds of reason, or is so arbitrary, capricious, or patently absurd that it results in a miscarriage of justice.  (See *People v. Miracle* (2018) 6 Cal.5th 318, 346–347; see also *People v. Parker* (2022) 13 Cal.5th 1, 49; *People v. Johnson* (2022) 12 Cal.5th 544, 605–606.)  A ruling that is " ' "merely debatable" ' " cannot constitute an abuse of discretion.  (*Johnson*, at p. 605.)  An evidentiary error does not require reversal if the error is harmless.  (See *People v. Eubanks* (2011) 53 Cal.4th 110, 152.)

### D.      *Analysis*

Prior to the prosecutor's question, Tina's testimony established that she was generally responsible for purchasing T.W.'s clothes and that T.W.'s clothes were age

appropriate. Tina also testified that defendant would occasionally go clothes shopping with her and T.W. and would sometimes pick out clothes for T.W. during those trips, but she (Tina) would approve the clothing that ultimately was purchased. This testimony established that Tina was primarily responsible for T.W.'s clothes, was aware of how and when T.W.'s clothes were purchased, and approved of the clothes that were purchased even if she did not initially pick them out. Moreover, as T.W.'s mother, defendant's wife, and part of defendant's household, Tina would naturally be aware of how the family's schedules operated, including the timing and nature of shopping trips. In other words, Tina's testimony demonstrated a personal awareness of how T.W.'s clothes were purchased and when there were opportunities to purchase T.W.'s clothes. Based on this foundational testimony, we cannot conclude that the court's decision to overrule defendant's speculation objection was beyond all reason or so arbitrary and capricious that it constitutes a miscarriage of justice. (See *People v. Miracle, supra*, 6 Cal.5th at pp. 346–347; *People v. Rodriguez, supra*, 58 Cal.4th at p. 631 ["Here, the testimony the court permitted was based on facts the witnesses had personally observed. The court did not abuse its discretion in finding the testimony not speculative."]; *People v. Thornton, supra*, 41 Cal.4th at p. 429.)

Alternatively, even if the trial court erred in overruling the objection, defendant suffered no harm. Tina answered the prosecutor's question by confirming there were times when defendant and T.W. did in fact go shopping by themselves. Tina's response was definite, clearly based on her own firsthand knowledge, and not speculative. Tina's response was also consistent with T.W.'s testimony that there were times defendant purchased provocative clothes for her. Further, defendant's counsel handled Tina's response in an adept way. Tina admitted that even when defendant and T.W. went shopping alone, she "always" saw and approved of the clothes that had been purchased. In other words, Tina's testimony shows that even when she was not present when T.W.'s clothes were purchased, she ultimately saw and approved of all clothes that were

9.

purchased for T.W. This testimony tends to undercut T.W.'s testimony that defendant bought her "revealing" or "provocative" clothing or made her wear such clothing around the house. Finally, we agree with the People's assessment that Tina's answer was a minor point in the trial. The focus of the trial, as well as the prosecutor's closing argument, was on the testimony of T.W., the testimony of defendant, defendant's statements to law enforcement, and defendant's statements to T.W. in the pre-text call. Tina's testimony had nothing to do with the nature of the physical abuse described by T.W., nor did it affect defendant's inculpatory statements to law enforcement and T.W. Although the prosecutor commented one time in rebuttal on Tina's testimony and the opportunity of defendant to buy T.W. clothes, the comment was brief and amounted to little more than five lines of argument. Quite simply, this aspect of Tina's testimony was not central to the case and was not nearly as significant as defendant would have us to believe. Therefore, under either the beyond a reasonable doubt standard of *Chapman v. California* (1967) 386 U.S. 18, or the probability of a more favorable outcome standard of *People v. Watson* (1956) 46 Cal.2d 818, we conclude that any error by the court in overruling defendant's speculation objection was harmless. (*People v. Eubanks*, *supra*, 53 Cal.4th at p. 152.)

## II. Inclusion of Tina and M.W. as Protected Persons

### A. Parties' Arguments

Defendant argues that the trial court was authorized to issue a postconviction protective order under section 136.2(i)(1) for the benefit of a crime victim. Because T.W. was the sole victim in this case, defendant avers the court erred by including people other than T.W. as protected parties. In reply, defendant argues that, because the protective order is contrary to section 136.2 and exceeds the court's jurisdiction, no objection was necessary to preserve the issue for appeal.

The People argue that defendant forfeited the issue by failing to object. Alternatively, the People argue that postconviction protective orders may be issued to

protect a victim or members of their household if there is some evidence the defendant committed or attempted to commit some harm within the victim's household. The People aver that Tina, T.W., W.W., and M.W. are part of the same household. The People argue defendant victimized M.W. because he attempted to solicit M.W. into delivering a letter to T.W. in violation of a pretrial order and he wrote a letter to M.W. that constitutes harassment. With respect to Tina, the People argue that defendant's actions towards T.W. caused Tina psychic harm, which makes her a victim under *People v. Clayburg* (2012) 211 Cal.App.4th 86 (*Clayburg*). Finally, the People argue that there was testimony that defendant touched W.W.'s buttocks, which constitutes harm to W.W.

### B.    *Legal Standard*

Section 136.2(i)(1) provides for the imposition of a protective order against a convicted criminal defendant that may be valid for up to 10 years. (§ 136.2(i)(1); *People v. Lopez* (2022) 75 Cal.App.5th 227, 236–237 (*Lopez*).) "When a criminal defendant has been convicted of [specific crimes, including] a crime that requires the defendant to register [as a sex offender under section 290, subdivision (c)], the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with a victim of the crime." (§ 136.2(i)(1); see *People v. Caceres* (2019) 39 Cal.App.5th 917, 921.) A "victim" is statutorily defined as "any natural person with respect to whom there is reason to believe that any crime as defined under the laws of this state … is being or has been perpetrated or attempted to be perpetrated." (§ 136, subd. (3) (§ 136(3)); see *People v. Delarosarauda* (2014) 227 Cal.App.4th 205, 211 (*Delarosarauda*).) Accordingly, a postconviction protective order under section 136.2(i)(1) is authorized if: (1) the defendant has been convicted of one (or more) of the statutorily enumerated crimes; and (2) "the protected person qualifies as a ' " 'victim' " ' of said crime(s)." (*Lopez*, at p. 237; see § 136.2(i)(1).) All findings necessary to support a protective order will be implied so long as there is substantial evidence to sustain such implied findings. (*People v. Race* (2017) 18 Cal.App.5th 211, 217 (*Race*).)

11.

### C.    *Analysis*

#### 1.    <u>Forfeiture</u>

Defense counsel did not object to the inclusion of people other than T.W. as protected parties under the protective order.  Because the issue could have been raised in the trial court but was not, defendant has forfeited the issue.  (*People v. McCullough* (2013) 56 Cal.4th 589, 593; *People v. Stowell* (2003) 31 Cal.4th 1107, 1114.)

However, there are exceptions to the forfeiture doctrine that apply in this case. First, defendant's argument is based entirely on the plain language of sections 136.2(i)(1), and 136(3).  The meaning or interpretation of a statute raises a pure question of law (*People v. Morgan* (2023) 87 Cal.App.5th 858, 864; *Race*, *supra*, 18 Cal.App.5th at p. 217), and appellate courts retain the discretion to resolve a forfeited issue where that issue is a pure question of law and involves undisputed facts.  (See *People v. Harring* (2021) 69 Cal.App.5th 483, 495.)  Second, courts may consider a claim that a sentence is unauthorized even if the claim is made for the first time on appeal.  (*People v. Dotson* (1997) 16 Cal.4th 547, 554, fn. 6.)  One court has indicated that whether a person may be included as a protected person under a section 136.2(i)(1) protective order is a claim that may be reviewed through the unauthorized sentence doctrine.  (*Race*, at p. 219, fn. 4.) Third, addressing the issue now will likely forestall a subsequent proceeding involving claims of ineffective assistance of counsel.  (*People v. Monroe* (2022) 85 Cal.App.5th 393, 400 [holding that appellate courts may address forfeited claims in order to forestall ineffective assistance of counsel claims]; *Race*, at p. 219, fn. 4.)  For these reasons, we decline to enforce the forfeiture doctrine and will address the merits of defendant's argument.  (See *Race*, at pp. 216–220 [addressing a defendant's argument that individuals were improperly included as protected parties in a section 136.2(i)(1) protective order despite the failure of defense counsel to object].)

12.

## 2.    Protected Parties other than T.W.

The People rely heavily on *Race* to argue that the definition of the term "victim" is sufficiently broad to cover Tina, W.W., and M.W.  In *Race*, the defendant was charged with two counts of lewd and lascivious acts upon a child under the age of 14 in violation of section 288, subdivision (a).  (*Race*, *supra*, 18 Cal.App.5th at p. 215.)  The two counts involved separate victims; the first count involved the defendant's daughter, while the second count involved the defendant's niece.  (*Ibid.*)  The defendant pled no contest to attempted lewd and lascivious conduct, which is a lesser included offense of count 2.  (*Id.* at p. 213.)  The trial court dismissed the remaining counts and sentenced the defendant to four years' imprisonment.  (*Id.* at pp. 213, 215.)  The court also issued a 10-year protective order under section 136.2(i)(1) and included the defendant's daughter as a protected person, even though count 1 had been dismissed and the daughter was not identified as a victim under count 2.  (*Race*, at pp. 213, 216.)  On appeal, the defendant argued his daughter was not a "victim" for purposes of section 136.2(i)(1) and thus, the court could not include her in the protective order.  (*Race*, at p. 216.)  The *Race* court affirmed the protective order.  *Race* examined the terms of section 136.2(i)(1), the definition of "victim" in section 136(3), and three cases construing section 136.2, subdivision (i)—*People v. Beckemeyer* (2015) 238 Cal.App.4th 461, *People v. Therman* (2015) 236 Cal.App.4th 1276, and *Delarosarauda*, *supra*, 227 Cal.App.4th 205.  (*Race*, at pp. 216–219.)  *Race* noted that *Beckemeyer* and *Therman* involved situations in which the crimes of conviction involved domestic violence and thus, the victims in those cases were victims of domestic violence.  (*Race*, at pp. 217–218 [discussing *Beckemeyer*, at pp. 463–467 and *Therman*, at pp. 1277–1279].)  *Race* noted that *Delarosarauda* reversed a protective order that included the defendant's children because the children were not harmed or attempted to be harmed by the defendant.  (*Race*, at pp. 218–219 [discussing *Delarosarauda*, at pp. 210–214].)  *Race* also pointed out that *Delarosarauda* had noted in dicta that a protected person need not be a "named victim" of a criminal conviction so

13.

long as "some evidence" showed the protected person had been " 'targeted or harmed' " by the defendant. (*Race*, at p. 219 [discussing *Delarosarauda*, at p. 212].) From this statutory and case authority, *Race* distilled the following rule: "the term 'victim' [for purposes of section 136.2(i)(1)] protective orders must be construed broadly to include any individual against whom there is 'some evidence' from which the court could find the defendant had committed or attempted to commit some harm within the household." (*Race*, at p. 219.) Under this rule, the term "victim" was "broad enough … to include a victim of a charged count of which [the] defendant does not stand convicted so long as the court had some competent evidence before it with which to conclude there was reason to believe the individual was a victim of a broadly defined domestic-violence-related offense." (*Id.* at p. 216.)

We agree with the People that *Race* is supportive of their position, but we are not confident that *Race* represents the current state of the law. At the time that *Race* was decided in 2017, the definition of the term "victim" in section 136(3) was the same as it is today. This definition is broad (*People v. Beckemeyer, supra*, 238 Cal.App.4th at p. 466), and covers any person and applies to any on-going, completed, or attempted crimes. (§ 136(3).) However, while the broad definition of "victim" has not changed, the language of section 136.2(i)(1) changed in 2018.

As quoted in *Race* itself, in 2017, section 136.2(i)(1) read in relevant part: "In all cases in which a criminal defendant has been convicted of a crime involving domestic violence …, the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with *the victim*." (*Race, supra*, 18 Cal.App.5th at p. 216, italics added [quoting 2017 version of § 136.2(i)(1)].) In 2018, section 136.2 was amended. (Assem. Bill No. 264 (2017-2018) Reg. Sess.).) In addition to amending subdivision (i)(2), which provides for a protective order for certain percipient witnesses, section 136.2(i)(1) was amended to read in relevant part: "In all cases in which a criminal defendant has been convicted of a crime involving domestic

14.

violence …, or a crime that requires the defendant to register pursuant to subdivision (c) of section 290, the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with *a* victim *of the crime*." (§ 136.2(i)(1), italics added.) Therefore, the amendment provided for a protective order to "a victim of the crime," instead of simply "the victim."

The Legislature's choice to use an indefinite article or a definite article is significant. (E.g. *Rapanos v. United States* (2006) 547 U.S. 715, 732–733; *North American Title Co. v. Superior Court* (2024) 17 Cal.5th 155, 174–175; *Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1396–1397 (*Pineda*).) "Use of the indefinite articles 'a' or 'an' signals a general reference, while use of the definite article 'the' (or 'these' in the instance of plural nouns) refers to a specific person, place, or thing." *Pineda*, at p. 1396; *Robinson v. Superior Court* (2023) 88 Cal.App.5th 1144, 1166; *Lincoln Unified School Dist. v. Superior Court* (2020) 45 Cal.App.5th 1079, 1094.) Stated differently, the indefinite articles "a" and "an" generalize their objects, while the definite article "the" particularizes an object and is a " 'word of limitation' " that refers to " 'something that … exists only one at a time.' " (*CD Investment Co. v. California Ins. Guarantee Assn.* (2000) 84 Cal.App.4th 1410, 1421 (*CD Investment*).)

Applying these principles to the 2018 amendments to section 136.2(i)(1), we believe that three conclusions are apparent. First, section 136.2(i)(1)'s reference to "a victim" is not limited to a single particular victim. Through the use of the generalized indefinite article "a" (*Pineda*, *supra*, 50 Cal.4th at pp. 1396–1397; *CD Investment*, *supra*, 84 Cal.App.4th at p. 1421), it is possible for a protective order to protect more than one person/victim.

Second, the phrase "of the crime" refers to a specific or particular crime due to the use of the definite article "the." (*Pineda*, *supra*, 50 Cal.4th at pp. 1396–1397; *CD Investment*, *supra*, 84 Cal.App.4th at p. 1421.) Because section 136.2, subdivision (i) is the only part of section 136.2 that provides for postconviction protective orders,

15.

section 136.2(i)(1) is the only part of section 136.2, subdivision (i) that provides for a postconviction protective order of a "victim" (see *People v. Corrales* (2020) 46 Cal.App.5th 283, 285–286; § 136.2, subd. (i)), and the phrase "of the crime" appears nowhere else within section 136.2, it is appropriate to focus on section 136.2(i)(1) to determine to which particular crime the phrase "of the crime" refers. (See *Department of Corrections & Rehabilitation v. Workers' Comp. Appeals Bd.* (2025) 17 Cal.5th 510, 520 [explaining that court's interpret a statute by considering the ordinary meaning of the text and related provisions, how a term is used in other parts of a statute, and the structure of the statutory scheme]; *People v. McCune* (2024) 16 Cal.5th 980, 991 [same].) The phrase "of the crime" is preceded in the same sentence by a reference to a criminal defendant who "has been convicted of" one or more of several specifically enumerated crimes. (§ 136.2(i)(1).) As such, the meaning of the phrase "of the crime" is clear; it refers to one of the section 136.2(i)(1) enumerated crimes for which the defendant has been convicted. (*Lopez*, *supra*, 75 Cal.App.5th at p. 237; see *Department of Corrections*, at pp. 520–521 ["If the text is clear, we must give effect to it."].)

Third, it follows from the previous two conclusions that a protective order is available for one or more persons as long as each person is a "victim" of any one of the specifically enumerated crimes under section 136.2(i)(1) for which the defendant has been convicted. (See *Lopez*, *supra*, 75 Cal.App.5th at p. 237.) That is, so along as there is reason to believe that an enumerated section 136.2(i)(1) offense for which the defendant was convicted "is being or has been perpetrated or attempted to be perpetrated" against a particular person, that person is a "victim" who may be protected by a section 136.2(i)(1) protective order. (See §§ 136(3); 136.2(i)(1).) If there is no reason to believe that an enumerated section 136.2(i)(1) offense for which the defendant was convicted "is being or has been perpetrated or attempted to be perpetrated" against a particular person, that person is not a "victim" and may not seek, or be named as protected party by, a protective order under section 136.2(i)(1). (See §§ 136(3);

16.

136.2(i)(1).)  In effect, the definite article "the" limits the broad universe of crimes encompassed by the section 136(3) definition of "victim" to only the section 136.2(i)(1) enumerated crimes for which a defendant has been convicted.  (Cf. *Pineda*, *supra*, 50 Cal.4th at pp. 1396–1397; *CD Investment*, *supra*, 84 Cal.App.4th at p. 1421.)  To the extent that *Race* means that a person can be a protected party under a section 136.2(i)(1) protective order even though that person is not a victim of a section 136.2(i)(1) enumerated crime for which the defendant was convicted, we disagree and cannot follow *Race*.  (See *Department of Corrections & Rehabilitation v. Workers' Comp. Appeals Bd.*, *supra*, 17 Cal.5th at pp. 520–521 ["If the text is clear, we must give effect to it."]; *Lopez*, at p. 237.)

As applied to this case, defendant was convicted of a single count of continuous sexual abuse of a child in violation of section 288.5, subdivision (a).  Section 290 requires a person who has been convicted under section 288.5, subdivision (a) to register as a sex offender.  (§ 290, subd. (c)(1).)  Therefore, the defendant was convicted of one of section 136.2(i)(1)'s enumerated crimes.

In terms of a victim, the information alleged the crime occurred between February 2012 and February 2017 and that the abuse was against T.W.  No other time frame is alleged, and no other abused person or victim is identified in the information.[4]  Similarly, the verdict form simply states that the jury found defendant guilty of violating

---

[4]    The charging instrument is a relevant consideration in determining whether a person is a "victim" for purposes of section 136.2(i)(1).  We note, however, that *Race* characterized *Delarosarauda* as holding in dicta that a protected person need not be a named victim of an offense.  (*Race*, *supra*, 18 Cal.App.5th at p. 219 [discussing *Delarosarauda*, *supra*, 227 Cal.App.4th at p. 212].)  We agree that section 136.2(i)(1) does not require that a person be expressly identified in a charging instrument in order to be considered a "victim."  Therefore, if a person meets the definition found in section 136(3), but only in specific relation to a section 136.2(i)(1) enumerated offense (as discussed above), that person is a "victim" who may be protected under a section 136.2(i)(1) protective order irrespective of whether that person is expressly identified in the charging instrument.

section 288.5, subdivision (a) "as charged in Count 1 of the Information." Tina, as the mother of T.W., was an adult between February 2012 and February 2017 and thus incapable of being the victim of the charged section 288.5, subdivision (a) offense. Further, there is nothing in the record or the indictment to suggest that W.W. or M.W. were victims of the charged 288.5, subdivision (a) offense. Therefore, the only victim of the section 288.5 offense for which defendant was convicted, and the only person who can be protected by a protective order under section 136.2(i)(1), is T.W. Because the trial court included Tina, W.W., and M.W. as protected parties under the protective order, the court erred. (§ 136.2(i)(1); see *Lopez*, *supra*, 75 Cal.App.5th at p. 237; *Delarosarauda*, *supra*, 227 Cal.App.4th at p. 212.)

The People also rely on *Clayburg* to argue that the term "victim" should be given a meaning expansive enough to encompass Tina, W.W., and M.W. *Clayburg* read the term "victim" to include the daughter of someone who had been stalked by the defendant. (*Clayburg*, *supra*, 211 Cal.App.4th at pp. 91–92.) However, as recognized by the People, *Clayburg* involved a protective order under section 646.9, subdivision (k) (§ 646.9(k)) for stalking, it did not involve a section 136.2(i)(1) protective order. (*Clayburg*, at pp. 88–89; see *Delarosarauda*, *supra*, 227 Cal.App.4th at p. 211 [distinguishing *Clayburg* on this basis].) Moreover, the amendments to section 136.2(i)(1) added the limiting phrase "of the crime" after the term "a victim." (Assem. Bill No. 264 (2017-2018) Reg. Sess.).) This limitation is not found in section 646.9(k). (§ 646.9(k); see *Clayburg*, at pp. 88–89.) Further, *Clayburg* interpreted the term "victim" in reference to Black's Law Dictionary and article I, section 28 of the California Constitution, not section 136(3) of the Penal Code. (*Clayburg*, at pp. 91–92.) Finally, *Clayburg*'s reading of the term "victim" was based heavily on the second sentence of section 646.9, subdivision (k)(1). (*Clayburg*, at pp. 91–92.) After the first sentence provides for a restraining order that prevents a stalking defendant from having any contact with "the victim" for a period of "up to 10 years" (§ 646.9, subd. (k)(1)), the second sentence of section 646.9, subdivision (k)(1)

18.

provides: "It is the intent of the Legislature that the length of any restraining order be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of the victim and his or her immediate family." (*Ibid.*; *Clayburg*, at pp. 88–89.) Over a dissent on this very point (*Clayburg*, at pp. 94–95 (dis. opn. of Perren, J.).), the majority in *Clayburg* concluded that the second sentence must be read as expanding the scope of the term "victim" to also include the victim's family. (*Clayburg*, at pp. 91–92.) However, the *Delarosarauda* court has disagreed with the *Clayburg* majority and concluded that the second sentence of section 646.9, subdivision (k)(1) is not meant to expand the meaning of the term "victim." (*Delarosarauda*, at pp. 211–212.) Instead, *Delarosarauda* concluded the second sentence is meant to provide guidance for the trial court in determining the length of a restraining order, which can be any period "up to 10 years." (*Ibid.*) We agree with *Delarosarauda* and the dissenting justice in *Clayburg* on this point. For these reasons, we conclude that *Clayburg* has no application to this case.

In sum, Tina, W.W., and M.W. were not "victims" of the section 288.5 offense for which defendant was convicted and could not be included as protected parties under a section 136.2(i)(1) protective order. The trial court's inclusion of these individuals as protected parties was thus erroneous.

## III. Order for HIV Testing

In relevant part, section 1202.1 provides that if a defendant commits certain enumerated offenses, including the continuous sexual abuse of a child in violation of section 288.5, the trial court must order the defendant to submit to an HIV test if the court "finds that there is probable cause to believe that blood, semen, or any other bodily fluid capable of transmitting HIV has been transferred from the defendant to the victim." (§ 1202.1, subd. (e)(5)(A).) Here, the parties agree that the trial court erred in ordering defendant to submit to an HIV test because there was insufficient evidence that a bodily fluid capable of transmitting HIV was transferred from defendant to T.W.

The record reflects that only saliva through kisses on the cheek, forehead, and ear may have been transferred from defendant to T.W. The federal Fourth Circuit Court of Appeals has noted that, "[u]nlike some viruses, HIV is not easily transmitted. It cannot spread by *saliva*, tears, or sweat …." (*Roe v. United States Department of Defense* (4th Cir. 2020) 947 F.3d 207, 213, italics added.) In light of the parties' agreement, as well as the observation of the Fourth Circuit, we conclude the trial court erred by ordering defendant to undergo an HIV test pursuant to section 1202.1.

## DISPOSITION

The trial court's order requiring defendant to submit to an HIV test pursuant to section 1202.1 is vacated. The protective order is vacated to the extent that it includes W.W., Tina, and M.W. as protected persons. The court shall amend the protective order to reflect that it is issued pursuant to section 136.2(i)(1) and not section 646.9(k), and that T.W. is the only protected person. Defendant's conviction and sentence are otherwise affirmed. This matter is remanded to the Tuolumne County Superior Court for further proceedings consistent with this opinion.


                                                 DE SANTOS, J.

WE CONCUR:


DETJEN, Acting P. J.


FRANSON, J.

20.